Goodwyn *vs.* Lloyd.

GOODWYN *VS.* LLOYD.

1. If a witness, whose deposition has been taken on the ground of his being about to leave the State, remain until the trial of the cause,—his deposition cannot be read in evidence.

2. But the failure on the part of a witness, thus situated, to put his determination of leaving the State into execution, until after a term of the court has elapsed, will not deprive the party of the benefit of his testimony, if he leaves the State before the trial of the cause.

3. And his death, within the State, before he executes his determination of leaving it, affords as good ground for using his testimony, as his absence from the State, at the time of the trial.

4. The maxim of the law, that the right to personal property, draws to it the possession, is true only, when the possession by another is consistent with the possession of the owner,—as in the case of a bailment.

5. A chose in action at common law is not assignable; but

6. A transfer of a chose in action for a valuable consideration, vests such an interest in the transferee, as a Court of Equity will enforce, and a court of law protect, if the assignee sue in the name of the assignor.

7. But where the possession of the property assigned, is held by another adversely, and under a color of title, and the owner would be driven to an action to recover his possession—it is a mere chose in action, and the transferee cannot maintain action in his own name.

This was an action of detinue for slaves, brought by the defendant in error. The plaintiff assumed title to the slaves, sued for under a contract of purchase from one Harwood Goodwyn. The proof on the part of the

defendant in error was, that Robert Goodwyn, the defendant below, had given to his son Harwood two negro girls, which went into Harwood's possession, and so remained for about two years. The slaves were then redelivered to Robert Goodwyn, and other slaves, the subjects of suit in this action, received by Harwood in exchange. Harwood Goodwyn remained in possession of the last mentioned slaves, for about the space of three years; and whilst sick and absent from home, Robert Goodwyn took them into possession, and had so remained, notwithstanding frequent demands made by Harwood. The slaves were then sold by Harwood Goodwyn to the plaintiff in the action, Lloyd,—and a bill of sale executed, on sufficient consideration.

The defendant offered testimony conducing to show, that the slaves in controversy, had been lent, and not given to his son Harwood.

Upon this state of facts, the court was requested, on the part of the defendant, to instruct the jury,—'that if the defendant had the adverse possession of the slaves, at the time they were sold by Harwood Goodwyn to the plaintiff,—then the plaintiff was not entitled to a recovery in that suit.' The court refused this instruction; and charged the jury, that if they believed the sale was absolute and *bona fide*, then the plaintiff was entitled to a recovery;—notwithstanding the defendant might have had wrongful possession of the slaves, at the time of the sale to the plaintiff; and plaintiff may never have had the actual possession.

The plaintiff, as part of his testimony, proposed reading the deposition of a witness, which had been taken

Goodwyn *vs.* Lloyd.

under the statute authorising the depositions of witnesses, to be taken, who are about to leave the State. The defendant below objected, on the ground, that the witness had remained in the State, after his deposition had been taken, until a term of the court had elapsed. It was in proof that the witness was dead; and that up to the time of his death, he had expressed his determination to leave the State.

The court overruled this objection to the deposition, and suffered it to go to the jury.

On this charge, to which exception was taken, a verdict was rendered for the plaintiff.

*Street*, for plaintiff in error.
*Erwin*, contra.

ORMOND, J.—There was no error in the admission of the deposition. The statute authorises it to be taken when the witness is about to leave the State : should he remain until the trial of the cause, it cannot be read. But his failure to put his determination of leaving the State into execution, until after a term of the court had elapsed, would surely not deprive the party of the benefit of his testimony, if he left the State before the trial of the cause. His death within the State, before he executed his determination of leaving it, certainly affords as good grounds for using his testimony, as his absence from the State, at the time of the trial. If not within the letter, it is certainly within the spirit and meaning of the law.

The remaining question is, whether the transaction detailed in the testimony in this cause, was not the sale

and transfer of a chose in action, and if so, whether the purchaser can maintain an action for the recovery thereof, in his own name.

The general division of personal property, is into things in action and things in possession. A right merely to recover the possession of a chattel by a suit, is a chose in action, as much so, as a bond or promissory note. In the latter case, the instrument is merely evidence of a right to recover a sum of money from another. In the former, the chattel being in the possession of another, if the possession is withheld, the true owner, neither in legal contemplation, nor in common parlance, can be said to have the possession; but having the right of property, he has the right to recover the possession.

It is a maxim of the law, that the right to personal property draws to it the possession; but this is true only when the possession by another, is consistent with the possession of the owner, as in the case of a bailment. But when such possession is held adversely, where the thing is held under a claim of title, and the owner is driven to an action to recover his possession, it is a mere chose in action.

That a chose in action is not at common law assignable, or, in other words, that the right to sue for and recover the possession, cannot be transferred to another, is an ancient doctrine of the common law—(Coke's Litt. 214, A.; 2 Black. Com. 397.)

A transfer of a chose in action for a valuable consideration, will, however, vest such an interest in the transferee, as a court of equity will enforce, and a court of law protect, if the assignee sue in the name of the assignor.

Goodwyn *vs.* Lloyd.

There can then be no doubt that the transaction disclosed in the testimony, is the transfer of a chose in action, and this is admitted by the defendant's counsel; but he contends that the rule does not apply, when the possessor of the chattel is a mere wrong-doer, which he insists is the predicament of the plaintiff in error. Without determining now, whether cases may not exist, in which the act of a mere trespasser or wrong-doer would operate no change of the possession, we will proceed to enquire what is the attitude of these parties.

The plaintiff below, it is true, proved a gift from the plaintiff in error, to his son, Harwood Goodwyn, in the first instance, and confirmed afterwards, by an exchange for other slaves, on a valuation made by the father himself: that the property thus obtained, remained in the possession of Harwood Goodwyn two years, and was taken out of his possession by the plaintiff in error during his absence from home—that he frequently demanded the possession of the property, which was refused by the plaintiff. The plaintiff offered evidence, conducing to prove, that the original transaction between him and Harwood Goodwyn, was a loan. The slaves remained in the possession of the plaintiff in error about four years, when Harwood sold his right in the slaves to the defendant in error.

It is manifest that the plaintiff in error not only held the slaves adversely to Harwood Goodwyn, but also that he held under color of title, which may account for the extraordinary apathy of Harwood Goodwyn, in suffering the possession of the slaves to remain so long undisturbed. That the possession of the plaintiff was adverse to

8 P. 31

Goodwyn *vs.* Lloyd.

Harwood Goodwyn, is too clear to admit of controversy. The statute of limitations would have commenced running at least from the demand of the slaves, and the refusal to deliver them, if sufficient time had elapsed, and the bar of the statute had been interposed. Such being the position of the parties, it is clear that the right of action could not be transferred by a sale of the slaves. No adjudged case has been cited to show that such an action can be maintained. The absence of all authority is persuasive to show what the law is. Indeed, so seldom has it been attempted to establish the principle, that the industry of the counsel for the plaintiff in error, has enabled him to furnish the court with but two cases, in which the point in question has been ruled.

In the case of Stedman vs. Riddich, (4 Hawke's R. 29,) this point was expressly determined. Chief Justice Taylor says: "But I know of no authority for the position, that a vendee or assignee may sue for property in his own name, which the vendor or assignor, at the time of the sale, could only recover by suit. It seems to me that much of the mischief which the rule designed originally to prevent, would still arise under such a practice, and it is not called for by the necessity of trade or commerce, or any of those causes which introduced the relaxation."

So, also, in the case of Stogdale vs. Fergate, (2 Marshall's Rep. 136,) the Chief Justice, giving the opinion of the court, expresses himself thus: "A chose or thing in action is contra-distinguished from a chose or thing in possession. If it be not in possession, it must be in action, and so *vice versa.* It follows, therefore, if the plaintiff was not in possession of the hogs at the time of the

Goodwyn *vs.* Lloyd.

sale, that the right of action could not have been thereby transferred to his vendee; and that he was not in possession, is evident." These cases are conclusive on the point involved in this case.

We have been referred by the counsel for the defendant, to an opinion expressed by Judge Story, in the case of the brig Sarah Ann, (2 Sumner's Rep. 206,) in which he is reported to have said: "I know of no principle of law, that establishes that a sale of personal goods is in-invalid, because they are not in the possession of the rightful owner, but are withheld by a wrong-doer.— The sale is not under such circumstances the sale of a right of action, but is a sale of the thing itself, and good to pass the title against every person not holding the same under a *bona fide* title for a valuable consideration, without notice; and *a fortiori* against a wrong-doer."

Entertaining the profoundest respect for the opinions of that eminent jurist, we feel constrained to dissent from an opinion which appears to be in hostility with well established principles.

Although the reporter has transferred the above remarks of Judge Story into the abstract of principles decided in the cause, it does not appear to us that the point was necessary to be determined in that cause—and that it was merely stated by him as an illustration. The case was on the Admiralty side of the Circuit court of the United States, for the first circuit. One question was, whether the master of a vessel which was stranded, and which he had abandoned to the underwriters, was not only the agent of the owners, but also retroactively the agent of those who might become owners of the ship, if the abandonment was actually and justifiably made.

Goodwyn *vs*. Lloyd.

Although the principle above stated might aid in the solution of that question, and be thus brought in aid of the argument, it was certainly a point not necessary to be determined in the decision of the cause, and therefore not entitled to the weight of an adjudged case. And, again, the judge merely states, that the effect of a sale under the circumstances supposed, would be to vest the title in the purchaser; how the right thus acquired could be enforced, is not stated, nor whether it could be enforced by the transferee in a court of law, which is the sole question before this court.

It is also urged, that the rule had its origin in a state of society different from ours—that the reason of its adoption has long ceased to exist—and that this court must adapt the law to the exigencies and wants of society. We cannot think so. Many of the reasons which influenced its adoption, must always exist in any mode of society, so long as wealth gives influence, and power is superior to weakness.

In England, as well as in this country, the rule has indeed been relaxed, as the wants of society, in its progress, demanded. And the relaxation, so far from weakening, has imparted vigor to it, by restraining it within its legitimate bounds. The rule is the foundation of the law against champerty and maintenance, which, by the decision of the court in the case of Holloway vs. Lowe, (7 Porter, 488,) has been considered law in this country.

Even if in our opinion, the law was of questionable propriety, we should hesitate long, before we would undertake the abrogation of a principle, coeval with the very foundations of the common law.

Let the judgment be reversed, and the cause remanded, to enable the plaintiff, if he can, to establish another title.