### BROWN *VS.* LIPSCOMB.

1. Where the title of a mortgagee becomes absolute by a forfeiture of the condition, a subsequent payment cannot, at law, divest him.

2. A stranger cannot be permitted to question the validity of the sale of trust propeity.

3. Adverse possession of a personal chattel, may be wrongfully obtained, and depends upon the *bona fides* of the claim, and is therefore a question of fact, for the consideration of the jury.

Error to Marengo Circuit court.

Detinue—tried before *Chapman,* J.

Brown mortgaged a negro to one Pistole, in eighteen hundred and twenty-nine, for five hundred dollars, to be paid in three years.   The money was not paid, and in eighteen hundred and thirty-two, Pistole assigned the mortgage to one Calpe.   Calpe executed a deed of trust of the negro, in eighteen hundred and thirty-four, to Nathan Lipscomb, as trustee, to secure the payment of a sum of money to the firm of William C. Lipscomb & Co., with power to sell the slave, and pay W. C. Lipscomb &

Brown vs. Lipscomb.

Co., and if there was money arising from the sale over after paying the firm, to pay it to plaintiff, in extinguishment of a debt he held against Calpe. This deed was attested by defendant below, as subscribing witness. The services of the slave were worth one hundred and fifty, or two hundred dollars per annum. After the execution of the deed of trust, the slave went into possession of Wm. C. Lipscomb. Before the sale which was made by the trustee, the slave was taken possession of by the defendant, who claimed him as belonging to his children, and publicly forbade the sale. Plaintiff bought the negro at the sale, and took a bill of the sale of the trustee.

On this evidence, the defendant moved the court to charge the jury, that the hire of the slave, while in possession of Pistole and Lipscomb, discharged the mortgage, and that if at the time of the sale, defendant held the slave adversely, plaintiff could not recover. This the court declined, and charged, that the hire could not be taken in account in this suit, and that if defendant acquired possession, as a trespasser, or fraudulently, his possession would not avail him, and plaintiff was entitled to a recovery. The charge of the court was assigned as erroneous. Verdict and judgment for plaintiff below.

*Erwin*, for plaintiff in error.
*Murphy*, contra.

GOLDTHWAITE, J.—Three points have been made by the counsel for the plaintiff in error, which, he insists,

9 P    60

are warranted by the evidence stated in the bill of exceptions.

1. That as the value of the services of the slave, while in the possession of the mortgagee and his assignee, was shown to amount to more than the principal and interest of the mortgage debt, it was extinguished by operation of law. The title, therefore, re-vested in the mortgagor, and he was entitled to re-take and retain the slave, against the mortgagee and his assignees.

2. That the sale under the trust deed, having been made when the slave was absent, and not within the custody or power of the trustee, so that no delivery could be made,—it was for this reason inoperative and void.

3. That as the plaintiff in error was in the adverse possession of the slave, when the sale was made under the trust deed, claiming to hold him in spite of and adversely to the trustee, and not under any title connected with the mortgage or trust deed, the sale was illegal and void, as against public policy, it being, under these circumstances, but the transfer of a right of action.

These positions will be severally examined in the order they are stated.

1. The validity of the mortgage from Brown to Pistole, was not disputed on the ground of usury in the Circuit court; but the argument is, that it is a harsh and unconscientious contract, which neither equity nor law will enforce to a greater extent than the interest of the sum lent or secured, and that the value of the services beyond this, must be applied in extinguishment of the original debt. We think it may be inferred from the evidence, that the mortgagee was placed in possession of

Brown *vs.* Lipscomb.

the slave, when the mortgage was executed, but we cannot infer what time the precise terms of the contract, in relation to the nature of the services, if any, was made, in point of fact. If there was no stipulation, the law would annex the condition to the mortgage, that the mortgagee should render a due account of all the income, profits and advantages—(Story on Bail. 232.) If it was stipulated, that the services should be set against the interest, it would be a circumstance from which an usurious intent might be inferred, if the then value was greatly more than the accruing interest, and it is very questionable whether equity would not interfere, to relieve against such a contract, (although not usurious in fact,) so as to compel a just account of the profits—(Story on Bail. 233.) By the contract of mortgage, the title was vested in the mortgagee, subject to be divested by the payment of the money, on or before the day stipulated. On the failure to pay, the title became absolute, and the mortgagor had nothing but an equity of redemption, *the possession having accompanied the mortgage.*

At the period fixed for the payment, the value of the services did not amount to the sum due, even if a court of law was competent to ascertain and settle the account between the parties, and no subsequent payment could, in law, have the effect to divest the title of the mortgagee, become absolute by the forfeiture of the condition, or revest it, in the mortgagor—(Story on Bail. 197.) These principles were recognised by this court, in the case of Hamer vs. Harrell, (2 Stew. & Por. 323,) which is decisive of this feature of this case.

2. It is not perceived, that the rules governing sales by

trustees, should be different from those which obtain with respect to all other persons. It may not be denied, that any circumstances of unfairness attendant upon a sale by a trustee, might be enquired into by competent parties in a court of equity, and if ascertained to be irregular or unjust, it might be set aside; but there is no rule which requires a sale to be public, or accompanied by delivery, peculiarly applicable to a trustee. In the present case, it appears that the sale was made with the assent of the grantor in the deed, and the *cestuis que trust* are not heard to complain. The plaintiff in error is a mere stranger to this proceeding under the trust deed, and cannot be permitted to question the validity of the sale, on the ground that the slave was not present, or delivered, when sold.

3. The remaining point to be considered, is that which relates to the adverse possession held by the defendant, when the sale was made; and before entering on its examination, it may not be improper to recapitulate the facts disclosed in connection with this point in the case. Shortly before the day appointed for the sale of the slave, he was taken from the possession of the trustee, without his knowledge or consent, and on the day of the sale, was in the possession of the plaintiff in error, who claimed him as belonging to his children. At the time of the sale, the trustee, *cestui que trust,* and the defendant in error, were publicly notified by the plaintiff in error, that he forbid the sale ;—whether these persons were also informed that the slave was in his possession, under claim of title adverse to the title of the trustee, is not stated, but is perhaps properly inferrable from the other

Brown *vs.* Lipscomb.

facts which we stated in connection with the sale. There were certainly facts from which a jury might infer an adverse possession, as it is certain the party did not claim to hold the slave by any title derived from, or having any connection with the mortgage or deed of trust. But it is equally certain, that the jury might have inferred, that the taking of the slave was tortious and wrongful, though taken under claim of title. The case, therefore, presents a different state of facts from that of Goodwin vs. Lloyd, (8 Porter, 237,) in which this court decided, that possession taken and held, under color of title, was sufficient to render a subsequent sale by the person having title, inoperative and void. It is clear, that the possession of the slave was not with the trustee: it is also clear, that no right of possession was claimed through him, but the slave was held adversely, and in spite of him. It cannot be denied, we think, by any one, that he had nothing but a right of action, if the taking was not a larceny, as there was a denial and disclaimer of all right in the trustee.

The statute of limitations would commence running from the time of such a denial and disclaimer, and it would rebut every presumption of the possession being held under, or in accordance with the actual and true title. There may be, and doubtless are cases, in which a denial or disclaimer of a title would not avail a party in possession of a chattel, as, where it was held by a guardian, bailee or tenant—in these, and the like cases, the title, though denied and disclaimed, could never be questioned, until the possession itself was actually restored to the person from whom it was derived. It may

be admitted, in relation to the possession of chattels as well as lands, that the ordinary presumption to be drawn from an entry or seizure without title, would be held to be in subordination to the title, but this would always be a mere presumption, which would be rebutted by actual proof of a disclaimer, or actual conversion, known or communicated to the holder of the true title.

This rule is perfectly familiar when applied to real estate, and is supported by numerous decisions—(Brant vs. Ogden, 1 John. 156; Jackson vs. Camp, 1 Cowen, 605; Jackson vs. Sharp, 9 John. 164; La Frombois vs. Smith, 8 Cowen, 589; Livingston vs. Penn. Iron Co., 9 Wend. 511.) But the cases are very rare in which it has ever been necessary to apply the rule to personal chattels. This has probably been owing to the inferior value of property of this description, when compared with real estate, and from the fact, that delivery almost always accompanies the transfer of the title. In two of the States which hold the same description of property as that which is the subject of this suit, similar questions have arisen to that which is now presented, and the courts of those States have held the rule of law equally applicable to personal, as to real estate—(Stedman vs. Reddick, 4 Hawks, 29; Stagdale vs. Fugale, 2 Marshall, 136.) Nor is the doctrine of these cases disputed in any decided case in this country, so far as our researches have enabled us to ascertain, except the case of The brig Sarah Ann, (2 Sumner, 206.) In this, even, it is questionable whether the learned judge intended to be understood as denying the application of the general rule to personal chattels. His observations are these: "the sale is not,

under such circumstances, (a sale, when the vendor was out of possession,) the sale of a right of action, but is a sale of the thing itself, and good to pass the title against every person not holding the same under a *bona fide* title, for a valuable consideration, without notice, and *a fortiori* against a wrong doer." Now, it seems to us, that the conclusion which the learned judge draws, is not warranted by the premises, for if it is admitted that the title cannot pass, if the possession is held adversely by one claiming *bona fide* and without notice, may not the claim of a wrong doer be equally *bona fide* and without notice? If possession will defeat a sale, when held under a merely colorable title, why should the right be different, when that possession is acquired by a trespass? This is not, in our opinion, the true foundation on which the rule rests, but it grows out of the policy of the law, which will not permit one to litigate a question, which properly belongs to another. The sale and purchase of rights of action, is the evil to be prevented, and it is equally the sale of such a right, whether the possession is held under color of title, or under a tortious and wrongful taking, accompanied with a *bona fide* claim of title. If an owner of a personal chattel is not in the actual possession, but it is withheld by another, and he is ignorant of the fact, and under such circumstances, parts with the title, it is conceived that his purchaser would succeed to his rights, but if the owner is dispossessed by one, *bona fide* claiming title, and the fact of the dispossession and *bona fide* claim is known to, or communicated to him, his title is changed into a *chose in action*, which cannot be conveyed or transferred to another.

As the *bona fides* of the claim, and its assertion with the knowledge of the seller, as well as the actual possession, are necessary to be ascertained, before it could be determined to be adverse, the question is one proper in all cases, for the consideration of the jury—(Jackson vs. Joy, 9 John. 102; Clapp vs. Bromagham, 9 Cowen, 530.) The court cannot, in any case, pronounce that a case of adverse possession is made out, as it depends, as before stated, on the *bona fides* of the claim of title. When this is ascertained, and a sale has been made with a knowledge on the part of the true owner, of such actual possession and claim by another, any sale made by him, will be inoperative and void.

The charge requested by the counsel for the plaintiff in error, *assumed* the question to be determined by the jury, but the charge actually given was erroneous, and well calculated to mislead the jury from the true question before them, on the evidence in proof. That was not whether the defendant below had acquired the possession by fraud or violence, but whether, at the time of the sale, the possession was held by him under a *bona fide* claim of title, known to the true owner. If the latter was the case, then the sale was inoperative, and the defendant below could not be compelled to litigate his title with the assignee, of the right of action remaining with the owner of the title.

Our conclusion is, that the Circuit court erred in the instructions given, and the judgment is reversed, and the case remanded.