## FOSTER v. GOREE.

1. A mere right of action in a chattel, cannot be sold so as to vest in the purchaser the right to sue for its recovery; but as the right to personal property draws to it the possession, if the possession of another is derived from, and held in subordination to that of the owner, as in the case of a bailment, he may sell, and his vendee will have the right to sue for its recovery, if the possession is improperly withheld.

2. A deed of trust being made and recorded, the maker of the deed, who, until default, was entitled to the possession of the property conveyed by the deed, sold it to McC. & C. who sold it to G.—*Held*, that the title of G being the title of the maker of the deed, was not adverse or hostile to that of the trustee.

3. A trustee must sell according to the terms of the deed; but if an irregular sale

is made, it may be waived by the maker of the deed and the *cestui que trust;* and in that event no one else can complain.

4. Regularly, personal property should be present at a trust sale; but if the maker of the deed, or one holding under him, refuse to produce it on the day of sale, he cannot afterwards object that it is sold in its absence, if the *cestui que trust* waives his right to have it present at the sale.

ERROR to the Circuit Court of Tuskaloosa.

Trover, for the conversion of a slave, by the plaintiff against the defendant in error.

On the trial, it appeared in proof that two persons by the name of Miller & Addison, executed a trust deed, by which the slave in controversy and some others, were conveyed in trust, to secure the plaintiff and another person, against liability, in consequence of their being the sureties of Miller & Addison, to a debt due in the State Bank, payable by instalments, which deed was duly recorded.

The deed provided, that upon a failure to pay either of the instalments, the trustee should, at the request of the *cestui que trust,* take into possession and sell a sufficiency of the property to satisfy such default; and that the makers of the deed should retain possession of the property until default made. That when the first instalment of the debt fell due, the trustee took possession of some of the slaves from McCown & Conrow, who then had them in possession, but a satisfactory arrangement being made by them for its payment, the slaves were returned to them by the trustee.

When the second instalment fell due, the debt not being paid, the trustee advertised and sold all the slaves in the deed mentioned—the negro sued for, being one of them, who was purchased by the plaintiff at two hundred and fifty dollars, due notice having been given of the time and place of sale, according to the terms of the deed, but the slaves were not present at the sale.

The defendant proved that he purchased the slave now sued for, from McCown & Conrow, at the price of one thousand dollars, and received from them a bill of sale, with warranty. The defendant was present at the sale, and forbade it, claiming the slave as his property. It was further proved that Miller & Addison had sold the slaves to McCown & Conrow, and delivered them the possession, and that the plaintiff had been compelled

to pay upwards of eighteen hundred dollars upon the debt in bank, on which he was the surety of Miller & Addison.

Upon this testimony, the defendant's counsel insisted that the title and possession of the defendant in this case, was adverse to the title of the plaintiff; and the slave not being in the possession of the trustee at the time of the sale, the sale to the plaintiff was void, and he could not recover; and the court so charged the jury, and the plaintiff excepted.

The plaintiff then moved the court to charge the jury, that if they believed from the evidence, that the defendant held under McCown & Conrow, who held under Miller & Addison by a purchase from them subsequent to the date of the trust deed, that then the title of the defendant would not be adverse to that of the plaintiff; which charge the court refused to give, and the plaintiff excepted.

After the jury had retired, they returned and asked the court what was an adverse possession? and were informed by the court that if the negro was not present at the sale by the trustee, but was in the possession of the defendant, who at the sale forbade it, and set up his title, that then the title of the defendant was adverse, and the plaintiff could not recover; to which the plaintiff also excepted.

The assignments of error bring to view the charges of the court, and the refusal to charge, as set out in the bill of exceptions.

PECK and PORTER, for the the plaintiff in error, insisted that the possession being derived from the maker of the deed, could not be adverse to that of the trustee; and assimilated this case to that of mortgagor and mortgagee. They distinguished this case from Goodwyn v. Loyd, [8 Porter, 237,] because in that case there was a claim under color of title. They also cited 2 Stewart, 144, as a case expressly in point, and referred to 5 Cow. 173; 7 ib. 323; 4 Kent's Com. 150 to 158.

COCHRAN and HUNTINGTON, contra, maintained that the title was held adverse, in as much as the defendant was a purchaser for valuable consideration, and held possession in hostility to the claim of the trustee; that the case in 8 Porter, 237, and that of Dunklin v. Wilkins, at the last term, were in point.

They also insisted that it was the duty of the trustee, to prevent a sacrifice, to reduce the property into possession before a sale; and that on principles of public policy, no trust sale could be supported when made in the absence of the property. They cited, 9 Dana, 372; 2 A. K. Marshall, 136; 8 Cow. 597.

ORMOND, J.—It can admit of no controversy, that the sale of a chattel by one out of possession, and to which he has the mere right of action, will not confer on the vendee such a title as will enable him to sue for its recovery in his own name. This is the point decided in Goodwyn v. Loyd, [8 Porter 237,] and rests upon the familiar principle, that a chose in action is not assignable at common law. It is equally as clear, that the *mere* fact that the actual possession is not in the vendor at the time of the sale, does not show that he may not transfer to the vendee, both the right of property, and the right to sue in his own name for its recovery, if the possession is improperly withheld. The right of the vendee, in such a case, to sue in his own name, will depend upon the fact, whether the person in possession of the property asserts a title to the property hostile to that of the vendor, or whether the title which he sets up is in subordination to, or derived from, the vendor.

If the former, then, although the possessor may have acquired the possession by a trespass or by contract,—as for example by a bailment, from the vendor, the title asserted by him being hostile to that of the vendor, could not be transferred by the latter, so as to vest the transferee with the right to sue in his own name; for in regard to personal property, there is no such rule as prevails in relation to real property; by which the tenant is forbidden to dispute the title of his landlord. But, if the latter, then, as the right to personal property draws to it the possession, if the possession was withheld after such sale, the vendee might maintain an action for its recovery in his own name. See Brown v. Lipscomb, [9 Porter 472,] where this doctrine is asserted and illustrated.

The question, then, on this part of the case is, what title did the defendant set up? Was it one adverse or hostile to that of the trustee? The title of the trustee was derived from the deed of Miller & Addison, vesting in him the legal title, and reserving to themselves only the right of possession, which right ceased, when default

was made in failing to pay the debt, to secure which the deed was made.   The title of the defendant is derived from McCown & Conrow, who purchased from Miller & Addison, after the deed was made and recorded.   It is therefore most apparent that the title set up by the defendant is, in fact, the mere title of Miller & Addison ; it cannot therefore be adverse or hostile to that of the trustee, which is derived from the same source, but *prior* in point of time.   In a word, the defendant is clothed with the title of  Miller & Addison, and  no other ; and if they could  not dispute the title of the trustee, neither can he.   If it could be admitted that the maker of a deed of trust could, after the making of the deed, by a sale of the property, create a title hostile to that of the trustee, and thereby prevent a sale of the property according to the terms of the deed, and drive the trustee to his action to recover the possession, there is  an end of this mode of securing the payment of debts.   It does not require the prophet's ken to foretell, that after such a decision there would be but few sales under deeds of trust.

It results from this examination, that the title of the defendant was not adverse to that of the  trustee ; but being derived from, and held under the  maker  of  the deed, was entirely consistent with the title of the trustee.

It was, however, strenuously urged, that on principles of public policy, sales by trustees, in the absence of the property, ought not to be tolerated.

The trustee  derives  his power to  act  from  the deed, and is bound to conform to its provisions.   In the language of the court, in Greenleaf v. Queen, [1 Peters, 138] where  the deed required the trustee to sell at public auction, " This was the test of value which the grantor thought proper to require, and it was not competent to the trustee to establish any other, although by doing so, he might in reality promote the interest of those for whom he acted."   Nor can it admit of controversy, that the power delegated to the trustee, is a special power, and that he cannot protect himself from liability, or vest a title to the property he sells, but by acting in strict conformity with it.

But these well established principles must be considered in connection with others equally clear.   The limitations on the power of the trustee, are for the benefit of those interested in the trust— the maker of the deed and the *cestui que trust*; and it cannot be

doubted that they may waive the performance of conditions designed for their benefit; it is equally certain that neither party can object that a duty has not been performed, the performance of which has been prevented by his own act.

The deed does not, in express terms, require that the property should be present at the time of the sale, but such must be the legal inference, as otherwise the property could not be expected to bring its fair value. But if the maker of the deed, who, by its terms, was entitled to the possession until default of payment, voluntarily retains the possession, and refuses to produce the property on the day of sale, he cannot object that it is sold in its absence. To allow him to prevent the sale by voluntarily withholding the property, would be to permit him to take advantage of his own wrong, and by his own act to defeat the provisions of the deed. Doubtless, the *cestui que trust* might refuse to permit the sale to proceed in the absence of the property; but if he waives this right, no one else can object to it.

Thus in the case cited from 1 Peters, 138, the purchaser objected that the property had not been sold by the trustee in the manner prescribed in the deed; but the court replied, that as the maker of the deed, and the *cestui que trust*, waived all objections to the regularity of the sale, no one else could complain.

In this case, the defendant who has succeeded, by his purchase of the trust property, to all the rights and liabilities of Miller & Addison, is precluded from objecting that the slave sued for was sold in his absence, and greatly below his value, because he voluntarily refused to produce him, and thus, by his own act, caused the result which he now complains of.

This point was thus ruled in the case of Echols v. Derrick, [2 Stewart, 144,] a case which, in all its material features, is precisely analagous to this.

Let the judgment be reversed, and the cause be remanded.