JohnsoN, C. J., delivered the opinion of the court. It is contended by the counsel for the defendant in error, that the plaintiff instituted his action of replevin, and procured his arrest, from malice and without. probable cause. It is conceded that malice and want of probable cause are both essential requisites to the maintenance of the present suit. A distinction has been taken between the particular form of action adopted, and an action in general terms. The argument is, that the term, probable cause, has an exclusive application to the particular action in which the party is arrested, and that although he may have a clear and unquestionable right of recovery in another form of action, that it will not protect him in a suit for a malicious arrest. The first point that arises in this cause, and the one that meets us at the threshhold, is, whether the plaintiff had a probable cause, of action upon which to maintain his replevin suit. The 30th section of the replevin law provides that, “when the original taking of the property in any action of replevin is not complained of, but the action is founded on the wrongful detention of such property, it may be alleged in the declaration, with requisite certainty of time, place, and value, that the defendant received the property, which may be set forth’ in the declaration) from the plaintiff or some other person, naming him, to be delivered to the plaintiff when thereto afterwards requested; but the defendant, although requested to do so, has not delivered the same to the plaintiff, but refuses to deliver the same, and unlawfully detains sucb property, to the damage of the plaintiffs.” And the 34th section also declares, that, “where the action is founded on the unlawful detention of the property, and the original taking is not complained of, the plea of the general issue shall be, that the defendant does not detain the goods and chattels specified in the declaration^ or any part thereof, in manner and form as therein alleged; and such plea shall put in issue, not only the Wrongful detention of such goods and chattels, but also the property of the plaintiffs therein.” Under the 30th section two distinct points are presented : The first is, whether the averment in the declaration, that the defendant received the property from the plaintiff, or some other person, is a mere legal fiction or a substantive and traver-sable averment. And, secondly, whether, under the breach, that the defendant had not delivered the property, although requested so to do, it is essential to show a special demand. This court, in the case of Pirani v. Barden, (5 A. R. p. 88 ), said that, “The 30th section of our statute is intended to embrace the whole class of bail-ments, where the defendant holds possession after request. And without deciding whether or not this objection, where there had been a good service of the writ, can be taken advantage of by error, after judgment by default and writ of inquiry found, we think it proper to remark, that not only should there be an averment of such delivery, but also of a special request or demand, for the return of the property. A different rule of construction would involve the absurdity of subjecting every bailee to an action of replevin, before demand of the property or refusal to deliver possession.” That case, t.o the extent that it goes, is doubtless correct; but the question recurs, does it go the whole extent of the statute? Upon this subject we think that there is much reason to doubt. We think that the court in this case, misconceived the use and object of the averments which the statute requires to be inserted in the declaration. The statute does not require that the plaintiff, in all cases in the detinet, should prove an actual receipt of the property by the defendant from the plaintiff, or some other person for him, but the intention was to extend the remedy to all cases where the plaintiff had the legal title, and is also entitled to the immediate possession. The receipt of the property, though an essential allegation in the declaration, is like the finding in trover, which is a mere fiction of law, and not necessary to be sustained by proof. It is insisted that replevin will not lie even in the detinet, unless the plaintiff has once bad actual possession of the property and bailed it, either by himself or some person for him, to the defendant. The replevin statute of New York is the original of which ours is a literal copy. This being the case, the adjudications of the highest court of that State, involving the construction of that statute, are surely entitled to great consideration. The Supreme Court of New York, in the case of Dunham v. Wycoff, (3 Wend. 281), by Savage, C. J., said that, “By the pleadings, it is admitted that at the time of the taking, the property was in the plaintiff, and the possession in Griswold, the defendant in the execution; and the question is, whether replevin lies? Since the case of Pangburn v. Patridge, (7 J. R. 142), it has been settled, that replevin lies where trespass de bonis asportatis will lie. The plaintiff must have property, general or special, and possession, either actual or constructive. In Thompson v. Button, (14 John. Rep. 84), Chief Justice Thompson lays down the broad proposition that, as a^ general principle, it is undoubtedly true, that goods taken in execution are in the custody of the law, and cannot be taken out of such custody, when the officer has found them in and taken them out of the possession of the defendant in the execution. In Clarke v. Skinner, (20 John. R. 467), Mr. Justice Platt has shown very conclusively, that that proposition is correct only as between the defendant in such execution and the officer; and in such a case it was applied in Gardner v. Campbell, (15 John. R. 401). A variety of cases are stated by Mr. Justice Platt, in which an action of trespass would be a very inadequate remedy. The case of Thompson v. Button was decided upon the principle of Pangburn v. Patridge, and was a case where the property taken by virtue of tire execution, was taken from the possession of the plaintiff in the replevin, and not from the possession of the defendant in the execution. The same principle laid down in Pangburn v. Patridge, was recognized in the late cases of Marshall v. Davis, (1 Wend. 109), and Hall v. Tuttle, (2 Wend. 475). The plaintiff having the property in the goods in question, had the constructive possession, for the property draws to it the possession. The plaintiff, therefore, had the right to take possession at pleasure, and could have sustained trespass; and replevin and trespass in such cases are concurrent remedies.” This was replevin in the cepit, and the doctrine laid down is, that the plaintiff having the property in the goods in question, had the constructive possession; and that the goods having been taken out of such constructive possession, the action in the cepit would clearly lie. The same court, in,the case of Barrett v. Warren, (3 Hill’s Rep. 351), by Broman, J., said that, “In the case at bar, the sheriff took the property and sold it to Townsend. As Townsend was the plaintiff in the execution, he was probably in no better condition than the sheriff, and might have been treated as a trespasser. But as to the defendant, if he innocently purchased the mare from Townsend, or from any one else, into whose hands the property had passed, I think there is no principle upon which he can be treated as a trespasser. The plaintiff must bring trover or replevin in the detinet.” This decision was pronounced subsequently to the adoption of the Revised Statutes of New York; which, so far as relates to the action of replevin, is a perfect counterpart of our own. In the case of Crocker v. Mann, (Missouri Rep., re-publication, Vol. 1, 2 and 3, p. 383), the Supreme Court of Missouri said, that, “By the act to regulate replevin, R. C. 659, which provides ‘that in all cases, where any goods or chattels shall be taken from the possession of any person lawfully possessed thereof, without his or her consent, it shall be lawful for such person to bring an action of replevin therefor, against any person in whose hands the same may be found.’ This statute was intended to put the action of re-plevin on a useful footing. All that is necessary to be done to comply with this statute is, to show the plaintiff possessed the property actually, or had the right to immediate possession, and that the same was found in the hands of another, that other must account for such possession.” But, it is urged that in case the circumstances here are such as to authorize replevin in the deitnet, yet the party would not be enti-tied to recover, unless be had demanded the property before he brought the action. We think, that under a fair construction of our statute, where a party innocently purchases property, supposing he should acquire a good title, he ought not to be subjected to an action, until he has an opportunity to restore the goods to the true owner. If replevin in the detinet would lie to recover property from a party, who had purchased it innocently, and who supposed at the time that he was acquiring a good title, for a much stronger reason would it lie in a case where the defendant made no pretence of title. It is not pretended that De Baun had any title whatever to the property, for which the replevin suit was instituted. He held it by the permission of the trussees, in whom the legal title vested upon the execution of the deed of trust, and that without any pretence of right on his part. But, as De Baun’s possession was by permission, and consequently lawful, he could not be subjected to the consequences of an action, until he had an opportunity to restore the property to the true owner, unless he had sold or otherwise converted it. The law dispenses with the necessity of a demand, where the defendant has committed acts inconsistent with the title of the plaintiff, and conducted himself in such a way as to render a demand wholly unavailing. It is perfectely evident, from the testimony, that De Baun had done such acts as would amount to a conversion, and would have superseded the necessity of a demand in a suit brought by the trustees for the same property. The question here is, whether his conduct at and subsequent to the purchase of Beebe amounted, to a conversion as against him: because, if so, he was under no legal obligation to demand the property. He engaged, that in case the trustees would postpone the sale from February to April- he would produce the negroes. The sale was postponed to the time indicated, but he failed to comply with his promise. It is evident, from all the testimony touching that matter, that had Beebe made a formal demand of the negroes, before the institution of his suit, it could not have availed any thing; and, indeed, he was not bound to make a .demand, as De Baun was still acting in regard to die property in a way that was wholly inconsistent with his title. In the case of Conway, ex-parte, it was admitted by this court that replevin would lie, but the ground then assumed was, that it would not afford the trustees a plain, direct, adequate and complete remedy. That decision was not based upon the principle that they had once possessed the property and had bailed it to the defendants. The facts show the reverse to have been the state of case. In the case of Robinson v. Calloway (4 A. R. p. 100), which was an action of replevin in the dctinet, this court said that “It is perfectly clear, under our Revised Statutes, page 659, that this action may be maintained for an unlawful taking, or a wrongful detention of a personal chattel. The plaintiff to support the action must show title; he has no right to a recovery unless he has been injured, either by an invasion of his right of property or his right of possession. Numerous other cases might be cited, as well of this court as of the courts of other States, which have more or less application to this case, but we deem the question too plain to require further comment or authority.” If this doctrine be correct, and that it is we think there can be no doubt, it is clear that the plaintiff was not required to show an actual bailment of the property in controversy in order to entitle him to recover in his action of replevin. This brings us to the quesion of probable cause. It is insisted that this applies exclusively to the particular action, upon which the party is arrested, and not to a cause of action in general terms. If the plaintiff in error had a clear legal right of action, or even a probable cause of action, upon which to maintain his replevin suit against the defendant, that question is fully at rest. It appears from the testimony that the defendant executed a regular deed of trust to William E. Wood-ruff, Lambert Reardon and George C. Watkins, by which he conveyed the identical property claimed in the action of replevin to them, as trustees, and empowered them to dispose of said property either at private or public sale for the benefit of themselves and others, who were beneficiaries in the deed. In pursuance of their authority as such trustees, they advertised a sale to take place on the twenty-second day of April, 1843, at which sale the plaintiff became the purchaser, But it is insisted that as the negroes were not present, the sale was absolutely void, and that the plaintiff derived no title under it. The trustees executed a regular bill of sale to the plaintiff, conveying all their right and title to the negroes, which they were expressly authorized to do by the deed of trust. It is conceded that the negroes were not present on the day of sale, and also that they were not separated^ but sold all together. These are some of the’circumstances upon which the defendant relies to -vitiate the sale and to deprive the plaintiff of his cause of action. In the case of Foster v. Goree (5 Ala. Rep. 428); the court said that; “It was however strenuously urged that on principles of public policy sales by trustees in the absence of the property ought not to be tolerated. The trustee derives his power to act from the deed and is bound to conform to its provisions. In the language of the court; in Greenleaf v. Queen (1 Peters 138); where the deed required the trustee to sell at public auction; ‘ This was the test of value which the grantor thought proper to require; and it was not competent to the trustee to establish any other; although by doing so he might in reality promote the interest of those for whom he acted.’ Nor can it admit of controversy that the power delegated to the trasteéis a special power; and that he cannot protect himself from liability, or vest a title to the property he sells but by acting in strict conformity with it. But these well established principles must be considered in connection with others equally clear. The limitations on the power of the trustee, are for the benefit of those interested in the trust — the maker of the deed and the cestui que trust; and it cannot be doubted that they may waive the performance of conditions designed for their benefit: it is equally certain that neither party can object that a duty has not been performed, the performance of which has been prevented by his own act. The deed does not in express terms require that the property should be pre-: sent at the time of the sale, but such must be the legal inference, as otherwise the property could not be expected to bring its fair value. But if the maker of the deed, who by its terms was entitled to the possession until default of payment, voluntarily retains the possession and refuses to produce the property on the day of sale, he cannot object that it is sold in its absence. To allow him to prevent the sale by voluntarily withholding the property, would be to permit him to take advantage of his own wrong, and by his own act to defeat the provisions of the deed. Doubtless the cestui que trust might refuse to permit the sale to proceed in the absence of the property; but if he waives tills right., no one else can object to it. Thus, in the cases cited from 1 Peters 138, the purchaser objected that the property had not been sold by the trustee in the manner prescribed by the deed, but the court replied that as the maker of the deed and the cestui que trust waived all objections to the regularity of the sale, no one else could complain. In this case the defendant, who has succeeded by his purchase of the trust property to all the rights and Habilites of Miller & Addison, is precluded from objecting that the slave sued for was sold in his absence and greatly below his value, because he voluntarily refused to produce him, and thus by his own act caused the result which he now complains of. This point was thus ruled in the case of Echols v. Dinick (2 Stewart 144), a case which, in all its material features, is precisely analogous to this.” It is also urged as an additional reason why the plaintiff should not derive any benefit from the sale, that he was, to say the least of it, particeps criminis, he having previously attempted, in conjunction with defendant, to run off the negroes and to appropriate the proceeds in violation of the provisions of the deed of trust, and further that the price for which they were struck ofF to him was wholly inadequate. It appears from the testimony that the plaintiff and defendant, entertaining a doubt whether the negroes would not be subjugated to the, payment of judgments existing against the defendant at the time and prior to the execution of the deed of trust, agreed to take them to New Orleans and sell them for the benefit of the beneficiaries in the deed. This was the express purpose for which the arrangement was made, and if the plaintiff was guilty of any fraud in that transaction, it was not upon the rights of the defendant or of the beneficiaries under the deed of trust. It could only have affected the rights of the judgment creditors of the defendant, and as it has turned out, even they could not have been injured under the construction that has since been given to the statute, by which if was declared that slaves should be held and descend as real estate. The defendant had possession of the negroes at the time the arrangement was entered into, and wholly failed on his part to carry it out according to the terms agreed upon by the parties. This all transpired before the time fixed for the sale in February, and from that time all communication and connection ceased between them. It was at the request of the defendant that the first sale was postponed until the April following; and then it was that he promised that the negroes should be forthcoming. It certainly cannot be true that the plaintiff contributed in the remotest degree to prevent the actual presence of the property on the day of sale in April; 1843. But it is said that the sum for which the property sold was so utterly inadequate; that that itself ought to vitiate the sale. Great inadequacy of price, when wholly Unexplained, is a strong-badge of fraud, and in many cases will render a sale absolutely void. But we ask, how is it to be ascertained whether the negroes would have brought more had they been personally present ? It is in evidence that the defendant was deeply indebted, and that numerous judgments were outstanding against him, and that a doubt existed in the public mind whether those j udgments would operate as a lien upon that species of property from the day of their rendition. Is it a matter of surprise under such circumstances that the property should have sold for a reduced price? We think not; and we also think this a full and satisfactory explanation of that circumstance. We will now proceed to apply these principles to the case under consideration. True, it is, that the deed of trust contained no express stipulation that the defendant, who was the maker, should retain the possession of the negroes; but the proof is, that he was permitted to retain them, and that he promised the trustees that they should be forthcoming on the day of sale. The sale that was first advertised by the trustees, and which was to have taken place in February, 1843, was at his request postponed until April following; at which time he promised to produce the negroes. He failed to produce them on that day, and they were sold in their absence. He was present at the sale, and made no objection to it, but acquiesced in it, and actually, either in person or by his agent, bid for the property. We consider it perfectly clear, under these circumstances, both from reason and authority, that it does not lie in his mouth to object to the sale on account of any irregularity. From this view of the law, as applicable to the facts involved in the reple-vin suit, we entertain no doubt but that the plaintiff’s title to the negroes was full and complete, and that he had a perfect right of action at the time of its institution. The question of probable cause is therefore entirely at rest. But, it is insisted that the plaintiff was actuated by motives of malice, and several circumstances are adverted to in support of the charge. Malice is either expressed or implied. The plaintiff has used no expression in relation to the defendant, indicating a disposition to harrass and oppress him. But it is said that the suit was commenced in Pulaski county, when it was well known that the negroes were not in that county; and this circumstance, amongst others, is relied upon to establish malice. It would be difficult to perceive how this could raise the slightest presumption of malice, when the defendant actually resided in the county, and the property, if not in it, was under his control and kept out of the way by him. The dismissal of the suit is also urged as a circumstance tending to evince a want of probable cause, and also a malicious intent. This of itself could only afford a presumption of malice where there is a want of probable cause; but when it is shown that the plaintiff had a complete cause of action, the strength of that presumption is greatly diminished, as he would then be presumed to have been actuated by other and nobler motives. The defendant having failed in the establishment of both of the first and essential requisites to the maintenance of his action, it is clear that he was not entitled to a recovery. During the progress of the trial in the court below, numerous exceptions were taken to the introduction of testimony. The first objection urged by the plaintiff in error is, that the court permitted the defendant to introduce, as evidence to the jury, the record and proceedings in the action of replevin, which he had described in his declaration, and also the record of the dismissal of that suit. The defendant most unquestionably was authorized to introduce the evidence thus offered, as it was strictly pertinent and wholly indispensable, to enable him to make out his cause of action. It was upon that proceeding that he was arrested, and it is that of which he now complains. He next objected to the reading of a certain card or hand-bill, which purported to have been prepared and posted up by the de-fendanl. It is clear, that that paper contained matter pertinent to the issue between the parties, and having been identified, it was properly permitted to go to the jury. Tance stated that the plaintiff admitted the facts, but denied the inferences. If he admitted the facts, and they were legitimate as evidence in the case, the moment their identity was established, they were fit matter to be submitted to the jury. The notice of the plaintiff, in which he offered a reward for the apprehension and delivery of the negroes, was also properly admitted, as it had a direct connection with the facts charged in the publication of the defendant. Those papers are supposed to have been offered for the purpose of raising a presumption of fraud and malice against the plaintiff, and if left alone and unexplained by other facts and circumstances, such would undoubtedly have been the result. It appears that some of the beneficiaries entered into an agreement, a short time before the first sale was to have taken place, that some one of them should buy in the property, and after-wards dispose of it for the benefit of all concerned. A blank was left for the name of the party who was to act as the agent of the rest, and which was filled up with the name of the plaintiff. To the insertion of his name he objected, and finally refused to act, and also to recognize the act. When this agreement was offered in evidence against him, he objected to it, but the court overruled his objection, and permitted it to be read to the jury. In this particular the court most clearly erred. He could not be compelled to act as the agent of the rest against his inclination; and, consequently, the contract was incomplete and not binding upon him. The next piece of evidence offered by the defendant, was an anonymous letter, supposed to have been written by the plaintiff. The letter was fully identified, by the admission of the plaintiff; and though it was framed with great caution, and carefully avoided the mention of the real object for which it was doubtless designed, yet it carried upon its face such a connection with previous transactions, as to make it legitimate evidence. The court, therefore, did right in admitting it. The plaintiff then offered certain testimony. The testimony of Prather was improperly excluded, as it is the province of the jury to give such construction as they shall see fit, upon the manner in which any thing may be spoken. He stated that the response of the plaintiff was not in a serious but in a jocular manner. The court also erred in refusing to permit the plaintiff to introduce testimony in regard to the statements of Tance on a former trial. He was particularly interrogated upon the point, and expressly denied that he had stated upon the previous trial that the plaintiff admitted a portion of the facts, but denied the inferences. It was certainly competent for the plaintiff to introduce proof to establish what he did testify upon the trial at a previous term of the court. This disposes of all the points raised upon the testimony offered of either party, and the only questions now remaining to be adjudicated relate to the instructions given and refused by the court. The defendant asked for ten several instructions, each of which was given by the court. We will now proceed to determine upon the propriety of the decision of the court in thus giving the defendant’s instructions. The first, second, third, eighth, ninth and tenth, were properly given, as they have a direct application to the facts developed upon the trial of the cause, and are strictly in accordance with the principles of law. The fourth is “That to enable said Beebe to maintain said replevin suit, it was necessary that there should have been at some previous time an actual delivery by said Beebe or some person for him, to said De Baun, of said negroes, and a refusal by De Baun to surrender the same.” The principle asserted by this instruction is not sustained by a just and legitimate construction of our replevin statute. To restrict the statute to this limit would be to say that replevin in the detinet would lie alone in cases of actual bailment, and thereby, as we think, defeat the very object of the Legislature. This instruction therefore should not have been given. The fifth is that an action of replevin is designed for the recovery of specific personal property, and is the proper action by which the possession of personal property can be obtained. It will not be denied that the principle here asserted is perfectly sound in the abstract. It was not controverted either in the argument or attempted to be impugned by the evidence, and therefore was merely and simply an abstract proposition, the truth of which was even admitted by the pleadings. The sixth is, “That probable or reasonable cause applies to the nature of the suit, and the defendant’s knowledge and bona fide belief that such suit ivas well founded and could be sustained.” Had the plaintiff not had a complete cause and right of action against the defendant at the time of the institution of his replevin suit, this instruction would have been appropriate and strictly applicable; but the facts and circumstances of the case, showing a complete cause and right of action, there is no ground left upon which to base such an instruction. The seventh is, “That the advice of an attorney will not furnish any justification to the defendant in an action for malicious arrest or prosecution, unless the same is asked in good faith and given bona fide on a full statement of the facts; and unless such opinion is well founded in point of law and given with an honest belief that the cause of action was well founded: And that whether such advice was so asked and given and followed is a matter of fact for the consideration of the jury.” The reasons assigned why the sixth instruction •should not have been given are strictly applicable to this, and therefore it is unnecessary to repeat them here. The plaintiff at the same time submitted thirty instructions, the twelfth, thirteenth and twenth-eighth of which were given, and the residue refused. The twelfth, thirteenth and twenty-eighth were •correctly given. The 1st, 2d, 3d, 4th, 5th, 6th, 7th, 11th, 14th, 16th, 17th, ISth, 20th, 21st, 24th, 25th and 26th, should also have •been given to the jury. The reasons why most of these instructions ¡should have been given, have already been assigned, either in the discussion of the principles involved in the cause, or in passing upon the instructions submitted by the defendant in error. The -eight instruction is, “That if Beebe had a cause of action for said negroes, and filed the proper declaration and affidavit, and gave the proper bond, he was entitled to a writ of replevin for the negroes, with a capias clause therein, whether the negroes were in the county •of Pulaski or not.” It would be difficult to conceive how this instruction could be material upon a trial before the jury. The right of the plaintiff to the capias clause had not been put in issue by the pleadings: and consequently the court was not bound to instruct the jury in relation to it. The tenth is, “That in the absence of any proof to the contrary, the sale of the negroes by the trustees to Beebe rvas valid, notwithstanding the negroes were not present at the sale.” This instruction the court properly refused. It did not follow that the sale would have been valid in the absence of the property, in case the defendant had had no agency in keeping it away. This instruction, therefore, to have covered the whole ground of the testimony, should have gone to that extent, and not having done so, it could not be said to apply to the case. The nineteenth is, “That if the jury should also believe from the evidence that Beebe was in any manner party or privy to any agreement with De Baun to send or carry off the negroes specified in the deed of trust, the effect of which was to place them beyond the reach or out of the control of the trustees at the sale on the 22d of April, 1843, it was an act of fraud which might vitiate the title of Beebe to the negroes in question, in any contest as between Beebe and any of the other securities or creditors of De Baun, but that it would not in law, vitiate the title of Beebe to the negroes in question acquired by purchase at that sale, in any contest as between Beebe and De Baun, and that De Baun cannot question the title of Beebe so acquired. The court certainly was not required to inform the jury how the sale in question would be regarded as between Beebe and the other securities of De Baun. That question was not before the court, and the instruction in that particular was purely abstract and consequently should not have been given. The twenty-second is, “That in the sale of personal property, by trustees or individuals, it is not necessary for the title to pass that the property should be actually present at the sale; and that the title of Beebe to the negroes in question is not impaired by that circumstance alone.” The general principle asserted by this instruction, so far as it relates to sales by trustees, is not warranted by the law, nor was it necessary for the court to adjudicate upon it in this case, as the facts were such as to take it out of the operation of the general principle. The instruction did not proceed upon the case made, and consequently should not have been given. The twenty-third is, “That 'upon the construction of the deed from the trustees to Beebe for the negroes in question, the legal effect of the power of attorney annexed thereto is to vest in Beebe a right of action for said negroes, or the value thereof, to the same extent that the trustees may have had such right of action, independent of any question whether the sale itself to Beebe was valid or conferred any title upon him.” How the power of attorney annexed to the deed executed by the trustees to Beebe operated upon Beebe’s rights, was a matter wholly immaterial. The testimony showed a full and complete title in Beebe, and consequently the power of attorney was mere surplussage, and had no effect whatever upon his own legal title. The twenty-seventh is, “That if the jury believe from the evidence that De Baun was aware of any fraud or mismanagement of the trust prior to the sale on the 22d of April, 1843, it was his right and duty to have called upon the interposition of the court of chancery to compel the due execution of the trust.” The powers of a court of chancery to compel the trustees to execute their trust in a proper manner certainly were not involved in the investigation of this cause. The grounds upon which this instruction is based, are merely hypothetical, and consequently it should not have been given. The ninth instruction asked is, “That if the jury believe from the evidence that Beebe was entitled to the negroes at the time he instituted the replevin suit, they should find for the defendant in this case, notwithstanding he may have been actuated by malicious motives.” This was properly refused. It was not sufficient that Beebe should have had a legal title to the property, but it was also necessary that he should have been entitled to the-possession and that De Baun should have wrongfully detained it. The fifteenth is, “That under the facts disclosed in this case, the deed of trust from De Baun and wife was not void, or a conveyance to defraud creditors, within the meaning of the bankrupt law of the 19th of August, 1841, and that even if it was, De Baun could not take advantage of it in this action.” Whether the deed of trust was in violation of the provisions of the bankrupt law or not, could not legitimately arise in this case. It is not in evidence that De Baun had applied for the benefit of that law, or that his creditors had taken any steps to force him into bankruptcy. The principle asserted by the instruction was therefore merely abstract and should not have been given. The twenty-ninth is; “That if Beebe had a right to the negroes, he had probable cause for instituting the action of replevin, and that, that is the legal meaning of the term probable cause; that the question is not whether Beebe had probable cause to believe that the ne-groes were within the county of Pulaski, but it is whether he had title to the negroes and cause of action against De Baun in respect thereof.” This should also have been refused. It did not follow that the plaintiff in error had a probable cause of action against the defendant, though his title to the negroes may have been clear and unquestionable, unless he also had a right to the possession. The thirtieth is, “That transitory actions, such as replevin, may be brought either in the county where the defendantis found or in the county where the property may be found: and if the jury believe from the evidence that the action of replevin in question was instituted by Beebe within two years after his right of action had accrued, and that De Baun had had possession of the negroes in question, at any time within that period, the right of Beebe to recover said ne-groes or the value of them in that action of replevin would not be defeated by the fact that the negroes were not in De Baun’s actual possession at the time of the commencement of the suit, or by the fact that the negroes were not in the county of Pulaski at that time, if Beebe had in other respects a cause of action therefor.” This instruction is believed to advance the notion that in case the defendant in replevin has had possession at any time within two years after the right of action accrued, though that possession should not continue up to the time of the commencement of the action, yet the plaintiff would be entitled to recover. This doctrine we do not feel prepared to sanction. The affidavit required of the plaintiff is that the plaintiff is lawfully entitled to the possession of the property mentioned in the declaration, and that the same was wrongfully taken or is wrongfully detained. In order to enable the party to maintain replevin in the detinet, he must be prepared to show that the defendant had possession, either actual or constructive, at the time of the institution of the suit. This instruction was therefore properly refused. We consider it clear, from these principles, that the Circuit Court erred in overruling the motion for a new trial, and that therefore the judgment of said court ought to be reversed. Judgment reversed.