## BERRY, use, &c., v. HARDMAN.

1. Upon a trial of right of property, levied on by attachment, the claimant may prove, that the defendant in attachment, at the time he purchased the slaves levied on, declared that he paid for them with the land of the *cestuis que trust*, (in whose behalf they were claimed,) and purchased the slaves for their use, the *res gestae*, being the sale, and purchase, and not the possession of the slaves; such testimony would be no proof of *consideration, if the attaching creditor's debt then existed.*

2. A charge given by the court, must be construed, in connection with the testimony to which it is applied.

Writ of Error to the Circuit Court of Barbour.

An attachment was sued out by the plaintiff in error, returnable to the circuit court, and levied by the sheriff on a female slave named Elva, and her child Jane, as the property of Cullen Cross, the defendant therein. The defendant in error interposed a claim to these slaves pursuant to the statute,

as the trustee of Sarah and Nancy Smith, and gave bond with surety to try the right. An issue being made up and submitted to a jury, a verdict was returned for the claimant, finding the property not subject to the attachment, and judgment was rendered accordingly.

A bill of exceptions, sealed at the instance of the plaintiff, exhibits the following case, viz: It was proved by the plaintiff, that the slaves in question were levied on while in possession of one Tolson, who had hired them from the claimant, on the same day that the deed of trust hereinafter referred to, was executed to the claimant. It was testified by one Fulton, that previous to the levy of the attachment, he saw the woman Elva in the possession of the defendant therein, who claimed her as his own.

It was then proved by the claimant, that when the defendant in attachment bought the slaves from him, that he (defendant) said he paid for them with the land of the *cestui's que trust*, and purchased the slaves for their use, and as their friend. Proof was also adduced that Cross had never paid one cent to the *cestui's que trust* for the slaves, and that he was indebted to them for other lands of theirs he had sold, and for work and labor of themselves and the woman Elva for one year or more.

The deed of trust referred to, purports to have been executed by the defendant in attachment on the 7th of February, 1846, and recites that he was indebted to Sarah M. Smith and Nancy J. Smith in the sum of $700, as well as largely indebted to other persons, and was unable to pay all; and feeling that the debt here particularized should be first paid, as it was made in the purchase of the slave Elva; therefore he sold to the claimant the woman Elva, aged about thirty years, and her female infant child, Jane, for one dollar, and the consideration above expressed, in trust, for the payment of the debt of $700. If that sum was not paid in two months from the execution of the deed, the trustee " shall put up a notice at three public places in Barbour county, and sell her at the market house in Eufaula, to the highest bidder for cash, and first pay himself for the expense of the deed, and apply the balance to the payment of said debt, and the remainder, if any, pay over to (him) me—said Hardman to keep

the negro until day of sale, or payment." This deed appears to have been acknowledged and recorded within less than thirty days after its date.

The plaintiff objected to the declarations of the defendant in attachment, as there was also other evidence showing that the slaves belonged to, or were purchased with the means of the *cestui's que trust;* but the objection was overruled, and the evidence permitted to go to the jury.

The court charged the jury, that if they believed from the evidence, that the slaves in question belonged either to the claimant, or the *cestui's que trust* mentioned in the deed, then they were not subject to the attachment, and they must find for the claimant.

P. T. SAYRE, for the plaintiff in error, made the following points: 1. The declarations of the defendant in attachment were clearly inadmissible to show with whose money he purchased the slave Elva. [McBride and wife, et al. v. Thompson, 8 Ala. Rep. 650; Gary v. Terrell, 9 Id. 206; Abney v. Kingsland & Co. 10 Ala. Rep. 355.] 2. The claimant must succeed upon the strength of his own title, and not upon that of the *cestuis que trust*, or any one else. [McGrew v. Hart, 1 Porter Rep. 175; Marriott & Hardesty v. Given, 8 Ala. Rep. 694.]

No counsel appeared for the defendant in error.

COLLIER, C. J.—In McBride and wife, et al. v. Thompson, 8 Ala. R. 650, we said, " the affirmation of the party in possession, that he held in his own right, or under another, is proper evidence as part of the *res gestae*," where the *res gestae* was " his continuous possession; but his declarations beyond this, are no part of the *subject matter*, or *thing done*, and cannot be received as such. While it is allowable to prove the statements of one in possession and explanatory thereof, it is not permissible to show every thing that may have been said by him in respect to the title; as that it was acquired *bona fide*, and for a valuable consideration; was paid for by the money of a third person, or his own, &c. This we have seen, instead of being part of the *res gestae*,

would be something beyond and independent of it." In Goodgame v. Cole & Co., at this term, a material question considered, was whether the declarations of the purchaser were admissible upon a contract of sale, and it was there held competent to show all that the vendee said at that time touching the subject matter. It is a necessary result of the recognition of this principle, that it may be proved the vendee said he was purchasing for himself or another, and how, or with whose means he would pay for the property. That case is distinguishable from the case first cited, and others depending upon the same facts, on the ground that the *res gesta* which the declarations were intended to explain, was different. In the one it was the possession, in the other it was the sale and purchase under which the possession was acquired. The subject matter of the latter was more expansive—embracing not merely the conclusion of the bargain by the respective parties to the transaction; consequently, what was said pertinent to the treaty between them—the declarations as to the means of payment, whether the vendee acted for himself or another, may well be considered a part of the *res gestae.*

It was conceded in the case last cited, that such evidence was not entitled to any influence *as proof of consideration,* if the debt to the attaching creditor existed when the sale took place. Yet the declaration of the vendee would be most potent to show that the purchase was made for the benefit of the trustees, upon proof being made that the means of payment were furnished by them, or taken from their estate. In this view then, the claimant might have been prejudiced by their exclusion, and it therefore follows that they were rightly admitted.

The charge of the court is not as well expressed as it might have been, yet it must be understood in reference to the evidence in the cause. The liability of the property to the attachment was resisted by the claimant, by the introduction of the deed to him in trust for others, and extrinsic evidence in support of it. In instructing the jury, that if the slaves in controversy belonged either to the claimant or his *cestui que trust* mentioned in the deed, then they were

not subject to the attachment, the court could have meant nothing else, than if the deed had been so established as to make it operative against the plaintiff, he was not entitled to a verdict. It was not intended as an instruction to the jury, that the claimant might resist the condemnation of the property, by showing a title in the *cestuis que trust*, independent of the deed. Nothing of the kind appears from the bill of exceptions to have been attempted; and it cannot be supposed that the jury were induced by the terms in which the charge was expressed, to speculate about matters to which there was no evidence, or that they could have been diverted from the only material inquiry. There is then, no error prejudicial to the plaintiff, and the judgment of the circuit court is consequently affirmed.