## HOOPER *vs.* EDWARDS.

1. In a contest between an existing creditor and a purchaser from the debtor, the declarations or statements of the latter are not admissible to prove the consideration of the purchase.

2. Where it appears that a contract was made and consummated on Sunday, it is the peculiar province of the jury to determine whether, under all the proof, it was justified by the necessity of the case.

3. If the exigency of the case can be such, as to render it necessary that

Hooper v. Edwards.

a creditor, in order to save his debt, or procure indemnity against liability, should contract with the debtor on Sunday, such contract would not be void, but would come within the saving of the statute.—(Clay's Dig. 592.)

4. If a contract between the debtor and a third person be not fraudulent as against his creditors, the latter have no right to complain of it, on grounds exclusively personal to the debtor.

ERROR to the Circuit Court of Russell. Tried before the Hon. John J. Woodward.

THIS was a trial of the right of property in two slaves, levied on under an execution in favor of the plaintiff in error against one Bryant S. Mangham, and claimed by the defendant in error. The plaintiff having made out a *prima facie* case, and shown that his debt existed before and at the time the claimant acquired his title to the slaves, the claimant proved that on the 24th Nov. 1848, and for some time before and after that date, he was deputy sheriff of Russell county and as such had in his hands sundry executions against said Mangham in favor of third persons; that on the night of the said 24th Nov. 1848, Mangham absconded from Russell county with all his negroes and was pursued by an agent of the claimant into the county of Tallapoosa, where he was overtaken on the evening of the next day, which was Sunday; and that on that evening, Mangham, in consideration that the claimant would assume and pay off the amount due on the executions in his hands, and in further consideration of a sum of money admitted by him to be due to the claimant, executed a bill of sale for the slaves in controversy to the claimant and delivered it and the slaves to the said agent. To prove the indebtedness of Mangham to the claimant, the court permitted the declarations of Mangham at the time the bill of sale was executed to be given in evidence, to which the plaintiff objected. The remaining points in the case will be understood by reference to the opinion.

GEO. D. HOOPER and RICE, for the plaintiff:

1. The title asserted by the claimant to the property is void upon two grounds; first, it is founded on a contract executed on Sunday.—Barker et al. v. Callihan, 5 Ala. 711; Ivey v. Nicks, 14 ib. 564; Dodson v. Harris, 10 ib. 566. Secondly, it is such trading and trafficking by a deputy sheriff with a debtor against

20

whom he held executions, as the policy of the law condemns under the circumstances disclosed in the record.—Bobo et al. v. Thompson, 3 Stew. & Port. 385.

2. The admissions and declarations of Mangham are not legal evidence against the plaintiff, who was a creditor of Mangham at the time such admissions or declarations were made.—Decatur Bank v. Kirksey, 5 Ala. 9; Amarine v. McCaskle, 12 ib. 17; Nolen & Thompson v. Gwinn's Heirs, 16 ib.

3. If the claimant obtained the bill of sale from Mangham, by false and fraudulent representations, he did not acquire title thereby, and the creditors of said Mangham cannot be thus deprived of the property.—Mahone v. Reeves, 11 Ala. 342.

4. No man can acquire a right by his violation of a positive law.—Fambro v. Gant, 12 Ala. 298.

Belser, for the defendant:

1. All acts done on Sunday are as valid as if done on any other day of the week, unless prohibited by common law or statute.—Styles v. Smith, 12 Wend. 57; Boynton v. Paige, 13 ib. 430.

2. The agreement found in the bill of exceptions is not prohibited by either common law or statute.—Clay's Dig. 592, § 1.—Sorrell v. Craig, 9 Ala. 541; Boynton v. Paige, 13 Wend. 425.

3. The jury have found that the defendant in error, was engaged in a work of necessity coming within the exception of the statute.—Clay's Dig. 592, § 1.

4. The cases decided in our court on Sunday contracts, &c., are unlike the present.—O'Donnell v. Sweeny, 5 Ala. 469; Dodson v. Harris, 10 ib. 566; Sheppard v. Easterwood, 9 ib. 198; Pierce v. Hill, 9 Port. 198.

CHILTON, J.—The judgment in this case cannot be sustained. The court committed a manifest error in permitting the statement of Mangham, the defendant in the attachment, to go in evidence as proof of the consideration of the sale and transfer of the title to the slaves from him to Edwards. It is well settled that in a controversy between a creditor and one who claims to be a purchaser from his debtor, to subject the property of the latter to the payment of his debt, the purchaser must show a valuable consideration for his purchase, and that this cannot be

done by the admissions of the debtor, either in the form of recitals in the conveyance, or by parol declarations or admissions, if the debt of the attaching creditor existed at the time of the purchase.—Berry use, &c. v. Hardman, 12 Ala. 604; Falkner v. Leath & Jones, 15 ib. 9; 3 Phil. Ev. 1236. But there is another objection equally fatal to the regularity of the proceeding. It is this. The contract by which Edwards asserts he became the owner of the slaves in controversy was made and consummated on the sabbath, and it was the peculiar province of the jury to determine, whether, under all the proof, the making of such arrangement was justified by the necessity of the case; but the court refused to charge that, if the jury should find from the proof that such contract was neither a work of necessity, nor charity, though it was made on Sunday, it was invalid and passed no title to Edwards, the purchaser.

As this case must go back, we will succinctly state our views in regard to the question raised upon the invalidity of the contract, from its having been made on Sunday. The statute declares that " no worldly business or employment, (works of necessity or charity excepted,) shall be done or performed on the sabbath, and every person so offending, being over the age of fourteen years, shall forfeit and pay the sum of two dollars for each offence, to be recovered before a justice of the peace of the county where the offence was committed. It is also provided, that no person shall serve or execute any process, writ, warrant, order, judgment or decree, (except in criminal cases, or for a breach of the peace,) unless upon the oath of two reputable persons, made before a justice of the peace, &c., that the person thus liable to such service intends to withdraw himself and escape from this State under cover and protection of the sabbath. —Clay's Dig. 592-3, §§ 1, 3. This act was passed to prevent vice and immorality, and while we must give it such construction as will carry out the intention of the Legislature in its enactment, and prevent the desecration of the first day of the week to common secular business, we must not on the other hand so construe it, as to make it a shield and protection to those, who, under cover of it, would remove their property out of the State, or place it beyond the reach of their creditors. If Mangham justly owed Edwards, as well as others, and was availing himself of the sabbath to run his property off and to avoid the

debt, could not the latter pursue him on that day? Would he for such an act be liable to the penalty prescribed by the statute for the violation of the first day of the week? We are clear in the opinion that he would not. It may be that his all depended upon the collection of the demand. Now would it not be absurd to say, that if his horse escapes from his possession and is about being lost to him, he may pursue and retake him on that day, or if, from some unforeseen casualty, his property is in danger of destruction, he may as a matter of necessity, protect it on that day, and yet that when his entire estate may be in imminent danger of being lost by the absconding of a debtor, he may not pursue him and obtain indemnity? But it is said, when he overtook him on sabbath evening, he could have waited until Monday and have made the contract. True, he might have watched the movement of his absconding debtor the whole night, and, if need be, have procured assistance, but this of itself, perhaps, would have amounted to a much greater desecration of the day than peaceably taking pay for his debt, and indemnity for his liability. The fact that in such case the statute authorises the levy of process upon making the required affidavit, pre-supposes the right of the creditor, whose demand is thus endangered, to receive satisfaction. Whether it was necessary, under the circumstances of the case, for the party to do what he did, was, we think, a question of fact for the jury to determine under the direction of the court. Would the claimant, without such pursuit and negotiation, have lost his debt, or was he in imminent peril of losing it? If so, the law, enacted to suppress vice and immorality, does not embrace the case. To hold that the debtor may, under cover of the sabbath, set his creditor at defiance, and having absconded with his property, deny to him all right to indemnity, would be to make the statute a protection for vice and immorality, as well as for the grossest injustice. If therefore, the jury should be of opinion that it was necessary, in order to secure the demand due from Mangham, that the claimant should do what he did, the contract should be considered valid. Suppose in this case that Mangham, after he had secured his other property so that his creditors could not find it, had returned and sued for these slaves, which he had thus sold to the claimant. If such sale had been entered into fairly and voluntarily, and a valuable consideration paid, would any court afford him a re-

covery upon the ground that he had delivered the slaves to the claimant in payment of a debt and to secure him against loss for libalities assumed, on Sunday? Could it be tolerated that he should be allowed to say, "although I was absconding with my property on the sabbath to avoid the payment of this debt, and thus put my creditor to the alternative of pursuing me on that day to get his pay, or of losing his demand, and although being pursued and overtaken, I voluntarily paid the demand in the transfer of these slaves, yet as all this occurred on the sabbath day—a day, which for the prevention of vice and immorality, must not be desecrated, I ask the court to recover back these slaves." We apprehend no case can be found which, under such circumstances, would authorise a recovery by him—certainly no decision of this court approximates to such a conclusion. If then the contract is otherwise *bona fide* and supported by a valuable consideration, as the plaintiff in the attachment had no lien when the contract was made, and we have seen Mangham could not avoid it, so neither can the plaintiff in the attachment avoid it.

As to the fact that the plaintiff was a deputy sheriff, and had executions in his hands against Mangham, which gave him power over the latter, and disabled him from dealing on equal terms, &c., this is a question which the plaintiff in the attachment, being a stranger to the contract, cannot raise. If the contract was fraudulent as against subsisting creditors, such fraud, and every circumstance going to establish it may be urged by them, but if otherwise, if its invalidity is attempted to be shown from considerations personal to Mangham, so long as he does not complain, the plaintiff in the attachment has no right to complain for him. —Brown v. Lipscomb, 9 Port. 472; Foster v. Goree, 5 Ala. 424; Garey v. Colgin, 11 ib. 519, and cases there cited; Herbert v. Hanrick, 16 ib. 599. Judgment reversed and cause remanded.