## HOOPER vs. EDWARDS.

1. What is said by the parties to a contract at the time it is made, as to its terms, is admissible evidence as a part of the *res gestæ*.
2. What is said by the parties at the time slaves are delivered under a contract of hiring previously made, in relation to the contract, is also admissible on the same principle.
3. A contract made on Sunday, unless made under a necessity in order to prevent a threatened loss, is void (Clay's Dig., p. 592, § 1.)

APPEAL from the Circuit Court of Russell.
Tried before the Hon. EZEKIEL PICKENS.

TRIAL OF THE RIGHT OF PROPERTY in slaves, between Geo. D. Hooper, plaintiff in attachment, and Loxla Edwards, claimant. It appears that the said Edwards was the deputy sheriff of Russell county in 1848-9, and lived within one mile of the defendant in attachment, Bryant S. Mangham, from whom he had hired some negroes for the year 1848, and that he had in his hands, as deputy sheriff, several executions against Mangham, one of which (in favor of one Crews) had been indulged; that on the night of the 25th of November,

1848, which was Saturday, said Mangham ran off with his property, and on the next day (Sunday) Edwards sent an agent after him, with general instructions to arrange and settle the said executions, and another small debt which Edwards had against him ; that one Adair, who also had a debt against said Mangham, accompanied said agent; that they overtook Mangham about sunset that evening, and the agent then purchased from him, for Edwards, the negroes now levied on, and agreed that Edwards should pay and satisfy the said executions in his hands, and also said Adair's claim, to which the said Adair assented; and that Edwards ratified the contract on the return of his agent.

The claimant, after having proved the existence of the debts against Mangham on which the executions were founded, and that he had paid all the claims except the execution in favor of Crews, offered to prove the conversation had between his said agent (Thornton) and said Mangham, " which immediately preceded and led to the arrangement then made between them, containing admissions by Mangham of the debts which claimant was to pay with the negroes purchased of defendant, and a statement of defendant's indebtedness and liabilities to claimant, which liabilities were the executions and claims above mentioned ; to which evidence the plaintiff objected, and his objection being overruled, he excepted."

" The claimant further proved that, in the spring of 1848, about ten of the defendant's negroes were delivered to him by the defendant, to be held for him on hire for the year 1848; and at the time of the delivery, claimant and defendant spoke of a previous contract for the hire of said negroes from defendant to claimant for the year 1848 ;—witness being claimant's overseer. To this evidence, so far as related to Mangham's statement that he had hired them, plaintiff objected ; but the court overruled the objection, and plaintiff excepted."

" The plaintiff then proved, by way of rebuttal, that the said Mangham, in the early part of the year 1848, owned, cultivated, and improved a large tract of land in Russell county ; and that the said land and negroes went into the possession of the claimant in March, 1848 ; and here stopped with his proof on this point. The claimant then introduced the deposition of one Heydenfeldt, to show a sale of the land

above spoken of, and the hire of the negroes to claimant in 1848, by the said defendant." This witness testifies, that he had in his hands, in 1848, as attorney of one Hurt, certain notes on said Mangham for collection; that Edwards, by arrangement between himself and Mangham, gave his notes to witness in place of Mangham's, and afterwards paid them in full; "that Edwards became indebted to Mangham by the purchase from him of his land, and the hire for one year of his negroes and mules." "The plaintiff objected to so much of the deposition of said Heydenfeldt, as speaks of a sale of land from defendant to claimant; but the court overruled the objection, and plaintiff excepted."

The court charged the jury, "that, if the contract for the purchase of the negroes was made on Sunday, it was void, unless the evidence satisfied them that it was a case of necessity. The plaintiff contended, that, as neither the sheriff nor his deputy, the claimant, was liable on the Crews execution, there was no necessity that it should have proved a part of the consideration of the said contract, and so the whole contract was void as against plaintiff, and the same as to the *defendant said Adair* (?) But the court charged the jury, if a necessity existed that the claimant should, on that day, secure himself by then making the contract; and if the evidence authorized them to believe that the claimant thought, from the slaves having been in his possession when run off, that he might be made liable, or believed that good faith called upon him to secure that debt,—then its inclusion as part of the consideration of the contract did not render it void, though not liable therefor, nor for the Crews debt; that if Adair had a debt which he wished then paid or secured, and Mangham had not the money to discharge it, and Adair wished to have it secured in that way, this would not render the contract void. To which charges the plaintiff excepted."

All these rulings of the court are now assigned for error.

S. F. RICE and GEO. D. HOOPER, for the appellant.

J. E. BELSER and N. HARRIS, *contra.*

LIGON, J.—When this case was before this court at a former term (18 Ala. 280), it was held, that the declarations

and statements of Mangham were not admissible to prove the consideration of the purchase of the slaves in controversy; and that the contract, being made on Sunday, was void, unless the claimant could show such facts to exist as would satisfy the jury that a necessity existed for him to protect himself from loss by making the contract on that day.

The evidence objected to in that case, and which was improperly admitted in the court below, was composed of the declarations of the defendant, which were introduced to prove the indebtedness of Mangham to the claimant, which formed a part of the consideration of the purchase. The present record shows, that the *bona fides* of this indebtedness was established by other proof. Some declarations of Mangham, or rather the conversation between him and the agent of the claimant at the time the sale was made, was admitted by the court below, as is shown by this record. This conversation was admitted, to show the terms of the sale, one of which was, that the claimant was to take the slaves, and pay certain claims against Mangham then in his hands as deputy sheriff of Russell county, and the claim of one Adair, who was present, and assenting to the arrangement.

What is said by the parties to a contract, at the time it is made, as to its *terms*, is admissible as a part of the *res gestæ*. These sayings are not mere admissions, or declarations of the parties, but they constitute the facts of the transaction.—Babcock v. Huntingdon, 9 Ala. 869. It does not appear that the purpose of offering the proof of what transpired between Mangham and the agent of the claimant, when this sale was made, was any other than to show that one of the terms of this contract was, that the claimant should pay certain specified claims in his hands, and under his control. For this purpose, it is admissible to prove what was said on this subject by the parties when the contract was made.

It is true, that such evidence could not be received to establish the actual existence and *bona fides* of any or all the claims mentioned; but this was not the purpose of its introduction, and it is shown that these facts had been made out by other testimony before this was offered. The only purpose seems to have been, to connect and identify the *bona fide* claims against Mangham, which the claimant had paid, with

the contract of sale, and for this purpose, what was said by the parties at the time it was made was properly admitted.— 12 Ala. 604 ; 15 *ib.* 9 ; 3 Phil. Ev. 1236 ; 18 Ala. 280.

For the same reasons, what was said in relation to the terms of the hiring from Mangham to the claimant, at the time the slaves were delivered to the latter, under the contract of hire, was rightly admitted.

The objection to the answer of the witness Heydenfeldt is not distinctly stated, nor does that answer seem to be connected (except the part of it which proves that the claimant hired slaves of Mangham in the year 1848) with any part of the case presented by the record. The bill of exceptions, however, does not pretend to set out all the proof, and we cannot, therefore, say that under all the proof it would not have been proper to show the payment of a sum of money on a sale of land from Mangham to the claimant. This is all this answer purports to prove. It is for the plaintiff in error to show that error exists, before this court can pronounce upon it, and as this is not done in the present instance, we cannot say that the court erred in allowing the answer complained of to be read to the jury.

The first charge of the court is in strict accordance with the decision of this court, when the case was here before, and is a correct exposition of the law. It declares, that a contract made on Sunday is void, unless the jury is satisfied from the proof that it was necessary for the claimant to make it on that day, in order to prevent a threatened loss.—18 Ala. 280 ; Clay's Dig. 592, §§ 1-3.

We do not think the second charge of the court is justly subject to exception. It seems that the plaintiff in error had contended, that inasmuch as the sheriff of Russell county could not be made legally liable for the amount of the execution in his hands, in favor of Crews against Mangham, because the plaintiff in that execution had agreed to indulge the defendant until Christmas of that year ; and as the claimant was in no sense liable for the debt to Adair when he sent his agent in pursuit of Mangham ; and as these debts formed a part of the consideration for the purchase and sale of the slaves in controversy,—the whole sale was void. The second charge was given to meet this view of the case, and is, in our

opinion, at least as favorable to the plaintiff in error as the law and facts of the case would justify. It submits matters to the jury which are not necessary to the claimant's recovery, and to this extent is too favorable to the plaintiff in error.

If Mangham, in consideration of the slaves delivered to the agent of the claimant, which exceeded in value the sum of the three executions on which the latter was liable for failing to levy them on the slaves before they were run off, stipulated that the claimant should pay the debts due from him (Mangham) to Crews and Adair, it could not affect the sale. The necessity, which alone could render it valid, had but little to do with these debts; it arose out of the executions in the hands of the claimant, for which he was liable, and his own debt against Mangham, coupled with the secret removal of the property which was subject to their payment, and the flight of Mangham on the first day of the week. In this emergency, the claimant might well assume to act as agent for Crews, whose execution was also in his hands, in order to secure his debt; and as Adair was present, and sanctioned what was done in his behalf, he was also agent for him (Adair) in this transaction. The charge of the court, in effect, asserts this, but it contains limitations unfavorable to the claimant, and favorable to the party excepting, of which the latter has no right to complain.

It was not necessary that the claimant should have "thought, from his having the slaves in possession, when run off by Mangham, that he might be made liable, or believed that good faith called upon him to secure that debt," as the charge asserts, before he would be authorized to act in securing either the debt of Crews, or that of Adair. An execution for the former was already in his hands as sheriff, which constituted him agent for its collection; and although its levy had been suspended for a short term by Crews, this suspension did not so separate him from this agency, as to prevent him from acting for Crews, in the emergency which had arisen, for the purpose of securing to him the amount of his debt. As to Adair, he was present at the sale, and sanctioned all that was done by the claimant as his agent.

But, as we have said, the errors in the charge, if any, fa-

vored the plaintiff in error, and he will not be allowed to claim any advantage from them.

There is no error in the record prejudicial to the plaintiff in error, and the judgment is consequently affirmed.