# FLANAGAN *vs.* MEYER & CO.

[ACTION ON PROMISSORY NOTE, BY PAYEE AGAINST MAKERS.]

1. *Contracts made on Sunday.*—There is a material difference between the provisions of the Code, (§§ 1571, 3302–03,) and the provisions of the act of 1803, (Clay's Digest, 592, § 1,) in relation to violations of the sabbath by contracts or worldly business: the act of 1803 prohibited all worldly business on that day, while the inhibition of the Code is restricted to certain specified acts, and, being penal in its character, must receive a strict construction.

2. *Same.*—The writing and signing of a note on Sunday is not a contract, unless it is also delivered on that day; nor does the statute (Code, § 1571) prohibit the writing and signing of a note on that day, and delegating to another, either expressly or by implication, authority to deliver it to the payee on another day.

3. *Same.*—In an action on a promissory note, signed by two sureties and their principal, as joint makers; the only evidence in the case showing, that the note was written on Sunday morning, at the house of one of the sureties, and was then and there signed by said surety and

the principal, (the other surety and the payee not being present,) and that the principal then took it and rode away; the court may properly refuse to instruct the jury, at the instance of said surety, "that if she was only surety on the note, and if all she did in relation to the execution of it was done on Sunday, they can not find against her"; and may also refuse to instruct them, at the instance of the principal, "that if he signed the note on Sunday, and there was no proof as to when it was delivered, they could not find against him."

APPEAL from the Circuit Court of Lowndes.
Tried before the Hon. GEO. GOLDTHWAITE.

THIS action was brought by Joseph Meyer & Co., against Jonathan Flanagan, Anne Key, and Milton H. Berry; was founded on a promissory note for four hundred and fifty dollars, executed by the defendants as joint makers, dated the 12th January, 1861, and payable one day after date; and was commenced on the 18th March, 1861. The defendants pleaded, "in short by consent, that the note which is the cause of action, was executed on Sunday"; and issue was joined on this plea. "On the trial," as the bill of exceptions states, "the plaintiffs having read in evidence the note declared on, the defendants introduced a witness, who swore, that he wrote the said note, on Sunday morning, January 13th, 1861, at the house of the said Anne Key; that said note was then and there signed by said Flanagan and Anne Key; that said Flanagan then took possession of it, and rode away; that said Flanagan was the principal in said note, and said Anne Key was surety; that the plaintiffs lived about fifteen miles distant; that Berry was not present, and did not then sign the note. This was all the proof. The defendant Key requested the court to charge the jury, that if they found, from the evidence, that she was only surety on said note, and that all she did in relation to the execution of said note was done on Sunday morning, then they could not find against her. The defendant Flanagan asked the court to instruct the jury, that if they found, from the evidence, that he signed said note on Sunday, and there was no proof as to when said note was delivered, then they could not find against him. The court refused each of these charges, and to each refusal the

party asking the charge excepted." The refusal of the charges asked is now assigned as error.

Stone, Clopton & Clanton, with whom was W. C. Griffin, for the appellants.—1. The act of Mrs. Key, in signing the note on Sunday, was void, and imposed no liability on her.—Code, § 1571; *O'Donnell v. Sweeny*, 5 Ala. 467; *Dodson v. Harris*, 10 Ala. 566; *Saltmarsh v. Tuthill*, 13 Ala. 406. Being void, no subsequent ratification, acknowledgment, or other act, could validate it.—*Shippey v. Eastwood*, 9 Ala 198; *Butler v. Lee*, 11 Ala. 885; *Bumgardner v. Taylor*, 28 Ala 687.

2. The presumption is, that a promissory note was executed on the day of its date; *a fortiori*, when it is proved to have been written and signed on that day, it will be presumed to have been delivered also.—1 Phil. Ev. 367, note 4; *Aldridge v. Br. Bank at Decatur*, 17 Ala. 45; 1 Salk. 485. This being the legal presumption, the burden of proof to the contrary is on him who asserts that it was delivered on another day.

3. If the note was delivered by Mrs. Key to Flanagan, to be delivered by him to the payee on another day, such act on her part would be a contract, and within the prohibition of the statute. The precise question was decided in *Clough v. Davis*, 9 N. H. 500; which case was cited and approved by this court, in *Saltmarsh v. Tuthill*, 13 Ala. 390. That the delivery to Flanagan, with authority to deliver to the payee, constituted a contract, see 1 Parsons on Contracts, 580–81; Story on Bailments, §§ 137–40; 8 Metc. 91; 8 Missouri, 109; *Rutledge v. Townsend, Crane & Co.*, 38 Ala. 706. To say that a man may create an agency, to do that which he can not himself lawfully do, presents a moral absurdity. "The power of constituting an agent is founded upon the right of the principal to do the business himself."—Story on Agency, § 481. Suppose an infant, or a married woman, executes a power of attorney, or appoints an agent, and the agent executes the authority after the removal of his principal's disability; is the principal bound by the act?

Clements & Williamson, *contra.*—Delivery is an essential part of the execution of a note. In this case, there was

no proof whatever as to the time of delivery. It was shown, however, that Berry was not present, and had not signed the note, when the other defendants signed it; and that the payees lived fifteen miles distant. Under these circumstances, the jury might well have believed that the note was not completed and delivered until the next day; especially, as a delivery on that day, which would have completed the contract, would have been an unlawful act. The charges asked were properly refused.

JUDGE, J.—Prior to the adoption of the Code, under the statute of 1803, which was then of force, "no worldly business, or employment, ordinary or servile work, (works of necessity or charity excepted,) could be done, performed, or practiced, by any person, or persons within this State, on the Christian sabbath, or first day of the week, commonly called Sunday;" and every person offending against this statute, of the age of fourteen years or upwards, rendered himself liable to a fine for every such offense.—Clay's Digest, 592, § 1.

The principle, that a penalty inflicted by a statute upon the doing of an act, is equivalent to a prohibition, has been often recognized by this court; and applying this rule, it has also been repeatedly held, under the influence of the statute above cited, that a contract made on Sunday is void.—*Saltmarsh v. Tuthill*, 13 Ala. 406, and cases there cited; *Hooper v. Edwards*, 18 Ala. 280; *S. C.*, 25 Ala. 528; *Rainey v. Capps*, 22 Ala. 288; *Hussey v. Roquemore*, 27 Ala. 281; *Bumgardner v. Taylor*, 28 Ala. 687. In *Saltmarsh v. Tuthill, (supra,)* it was held, under the same statute, that the endorsement of a bill on Sunday, and delivery of it to the acceptor, to be used for his accommodation, was "worldly business," although the acceptor did not negotiate it until Monday, or some subsequent day; that the transaction on the part of the endorser was not "the mere writing his name, but included an authority to the acceptor to negotiate;" and that the transaction was void.

But the act of 1803 was materially changed by the adoption of the provisions of the Code on the same subject. Section 1571 provides, that "all contracts made on Sunday,

unless for the advancement of religion, or in the execution, or for the performance of some work of charity, or in case of necessity, are void." Section 3302 imposes a fine upon "any person who, on Sunday, compels his apprentice or servant to perform any labor, except the customary household duties of daily necessity, comfort, or charity;" and section 3303 provides for the punishment, by fine, of "any person who engages in shooting, hunting, gaming, racing, or in any other sport, diversion, or pastime, on Sunday, or any merchant, or shop-keeper, except druggists, who keeps open store, or disposes of any goods on Sunday." The principal difference, it will be perceived, between the statute of 1803 and the provisions of the Code above cited, is, that by the former *all worldly business* on a Sunday was prohibited; whilst by the latter, the inhibition is restricted *to certain specified acts;* and being penal in their character, these provisions must receive strict interpretation.

The writing and signing a note on Sunday, is not the execution of it on that day, unless it be *delivered* the same day to the payee; delivery being essential to make it operative as a contract.—*Saltmarsh v. Tuthill, supra,* and authorities there cited. Nor is it prohibited by our statute law, as it now exists, that one shall sign a note on Sunday, and, expressly or impliedly, delegate authority to another to deliver it to the payee on some subsequent day of the week.

When Mrs. Key signed the note sued on in this case, as the surety of Flanagan, and gave to Flanagan the possession of it, it could have been for no other purpose than to be delivered to the payees; and if it was delivered on any other day than Sunday, it was binding upon her as a valid contract. If the charge requested by Mrs. Key had been given, the jury would have been restricted by it to the consideration of what she herself did, on Sunday, in relation to the note; and no verdict could have been rendered against her, even though the jury might have believed there had been a valid delivery of it on some subsequent day. The court, therefore, properly refused to give this charge.

The charge requested by Flanagan was, in effect, that under the circumstances of the case, the burden of proof was upon the plaintiffs, to show that the note had not been

delivered on Sunday. It was for the jury to say, whether, under all the circumstances, it had been delivered on Sunday, or not; the note bearing date on a different day. When the note was signed by Flanagan and Mrs. Key, it was still not perfected, as another signature was afterwards procured; and when it was thus signed, the plaintiffs, who lived fifteen miles distant, were not shown to be present, and no notice was traced to them that it had been signed by either of the parties on Sunday. Under these circumstances, there was no error in the refusal to give this charge.

Judgment affirmed.

NOTE BY REPORTER.—On a subsequent day of the term, in response to an application by the appellants' counsel for a re-hearing, the following opinion was delivered :

JUDGE, J.—In support of the application for a re-hearing, the case of *Clough v. Davis*, (9 N. H. 500,) is relied on as authority. It is sufficient to remark of that case, that it was decided under the influence of a statute similar to the statute of 1803 of this State. It was under the latter statute that the case of *Saltmarsh v. Tuthill*, (13 Ala. 390,) was decided, which decision is in harmony with the New Hampshire case, and neither is an authority against the opinion delivered in this case.

In support of the correctness of the opinion, we quote from 2 Parsons on Contracts, page 763 : "If a contract is commenced on Sunday, but not completed till a subsequent day; or if it merely grew out of a transaction which took place on Sunday, it is not for this reason void. Thus, if a note is signed on Sunday, its validity is not impaired if it be not delivered on that day."—See, also, *Butler v. Lee*, 11 Ala. 885. The cases cited by the author above named, consisting of decisions of several of the States made under the influence of statutes similar to our own, fully sustain the doctrine of the text.

But it is insisted, that the act of Mrs. Key, in delivering the note to Flanagan, to be delivered to Meyer & Co., was itself a contract, within the prohibition of section 1571 of

the Code. We hold, that Mrs. Key made no contract on Sunday with Flanagan. It takes two or more to make a contract, and it must be founded on a valuable consideration. For the benefit and accommodation of Flanagan, and without valuable consideration moving to her therefor, she signed the note as his surety, having no interest in its being delivered to the payees, and being under no obligation, legal or moral, to deliver it, or have it thus delivered. If Flanagan should become bound by it, then it was to be binding on her; but otherwise, not. Neither did Mrs. Key make any contract with the payees of the note, until it was *delivered* to them ; and they could have had no right of action, either against her or Flanagan, for its non-delivery. It seems to us too clear for argument, that what Mrs. Key did in the premises on Sunday, did not amount to the making of a contract, and therefore is not within the prohibition of the statute ; nor was what she did in violation of any rule of the common law. By the common law, no *judicial act* could be done on Sunday. But, as to the making of contracts, and all other acts, not of a judicial nature, the common law made no distinction between Sunday and any other day.—2 Parsons on Contracts, 757, note *n.*

But it is contended, that the opinion seems to present a moral absurdity, in holding that, under the circumstances of the case, the note was a binding contract on Mrs. Key, if it was delivered to the payees on any other day than Sunday. If such be the fact, the law, and not the court, is responsible for it. It may seem inconsistent, and a "moral absurdity," that the legislature should have declared void all contracts made on Sunday ; should have imposed a fine on any person who compels his apprentice or servant to perform labor on that day, except it be "the customary household duties of daily necessity, comfort, or charity ;" should have provided for the punishment of any person "who engages on Sunday in shooting, hunting, gaming, racing, or in any other sport, diversion, or pastime ;" should have prohibited any "merchant, or shop-keeper, except druggists, from keeping open store, or disposing of any goods," on Sunday ; and yet have left the blacksmith, the carpenter, and every other artificer, and every person what-

soever except those specially prohibited, *at full liberty to ply their respective vocations on the same day*. Such, however, is the state of the law, and we have not the power to change it, if we would.

It should be borne in mind, however, as we have held at the present term, that "the legislature is under constitutional restrictions against compelling the observance of a Christian, or Jewish, or any other religious institution, because it is such"; and that the power to legislate "on the subject of abstaining from worldly employments on the first day of the week, is referred to the police power of the legislature."—*Mayor & Aldermen of Mobile v. Frolickstein*, at the present term.

After carefully considering the argument in support of the application for a re-hearing, we feel constrained to overrule the application.