# Wheeler *v.* Glasgow.

*Action for Money Paid on Certificate of Deposit.*

1. *Burden of proof.*—A son, who after his father's death asserts a gift to himself of a certificate of deposit issued to the father for money deposited, has the burden of showing that the father parted with the ownership of the certificate.

2. *Gift inter vivos when complete.*—A certificate of deposit indorsed and delivered as a gift is a complete assignment of the fund and such gift is not revoked by the death of the donor before the money is collected.

3. *Evidence of intention to make gift.*—The facts that the relation of father and son existed between the claimant and deceased; that deceased had made advances to his other children; that he had frequently declared his intention to give claimant $700.00 to equalize his portion with the other children, show that the indorsement and delivery of the certificate for that sum were intended as a gift.

4. *Gift not a contract.*—A gift completed on Sunday is not violative of Section 1749 of the Code which declares void contracts made on that day.

Appeal from the City Court of Birmingham.
Tried before Hon. H. A. Sharpe.

Ward & John, for appellants, cited *Autrey v. Autrey,* 37 Ala. 617; *Black v. Oliver,* 1 Ala. 449; *Walker v. Gregory,* 36 Ala. 183; *Clarke v. Colbert,* 67 Ala. 92; *Hill v. Freeman,* 73 Ala. 201.

Taliaferro & Houghton and Gillespie & Smyer, for appellee, cited *Walker v. Crews,* 73 Ala. 412; *Sims v. Sims,* 2 Ala. 117; *Smith v. Savings Bank,* 10 Am. St. Rep. 400; *Drew v. Hagerty, Ib.* 255; *Brabrook v. Boston Bank,* 6 Am. Rep. 224; *Tankersly v. Graham,* 8 Ala. 247; *Day v. Thompson,* 65 Ala. 269; *Preston v. Ellington,* 74 Ala. 133; *O'Donnell v. Sweeney,* 5 Ala. 457; *Anderson v. Bellinger,* 87 Ala. 334; *Causer v. Snowden,* 39 Am. Rep. 363.

HARALSON, J.—This action was instituted originally against the Jefferson County Savings Bank by appellee to recover a deposit of $700.00 made by his intestate, Jonas

Wheeler. The duly authorized agent of the bank made an affidavit, that the money was claimed by appellant, as provided by section 2610 of the Code, and the money deposited in court. Appellant voluntarily appeared, and had himself substituted as defendant in place of the bank. Defendant claims the money by gift from Jonas Wheeler who was his father.

As we have reached a different conclusion from the City Court on the evidence, it becomes necessary to state it r·ore in detail than we would otherwise do. Before proceeding to its consideration, we remark that we are not permitted to indulge any presumption in favor of the finding of the trial court as counsel intimate we should, for, the act, establishing the City Court of Birmingham requires the appellant court to review the conclusions and judgment of the City Court on the evidence, without any such presumption. We are aware of the advantage the trial court has in seeing and hearing witnesses examined; but we must consider the evidence as it appears to us from the record. The testimony of Eugene Enslen, the cashier of the bank, introduced on the part of plaintiff, shows, that Jonas Wheeler, on January 4, 1889, made two deposits, one of $1,030.04 and the other of $700.00, for each of which he took a certificate of deposit, bearing interest at the rate of six per cent. per annum; that on July 22, 1889, defendant produced both certificates, properly indorsed by Jonas Wheeler, and requested that one thousand dollars be paid to James Downey, and that seven hundred dollars be deposited in the bank to his own credit on interest, and the bank issued to him a certificate of deposit for the same in his own name, bearing interest at the rate of six per cent. per annum. James Downey, another of plaintiff's witnesses, testified, that he made application, through defendant, to borrow from his father one thousand dollars; that on July 22, 1889, he met defendant in Birmingham, by pre-arrangement, about nine o'clock in the morning, and executed and delivered to him a note and mortgage payable to Jonas Wheeler for one thousand dollars; and just as this was done, information came that Jonas Wheeler was dead. Defendant and witness went to the bank, and defendant had $1,000 paid to the witness. The testimony of Enslen clearly shows that the money was originally deposited by Jonas Wheeler and the certificate of deposit issued to him; but as to this fact there is no controversy. The burden of proof is, therefore, shifted on defendant to show that Jonas Wheeler had parted with the right and title to the certificate of deposit. We weigh the evidence by this rule.

[Wheeler v. Glasgow.]

The circumstances attending the indorsement and delivery of the certificate are shown by the testimony of Mrs. Wheeler, the widow of Jonas Wheeler, Albert Wheeler, a brother of defendant, and Bagley, a brother-in-law. On Sunday, July 21, 1889, the parties were at the house of Albert Wheeler, dining. Mrs. Wheeler testified that Jonas Wheeler asked her to get his papers, from which he selected the two certificates of deposit, and said he wanted defendant to carry the certificate for $1,000 to James Downey to be loaned to him at eight per cent. interest; and handed her the certificate of $700.00, saying he was going to give it to defendant, and also the interest on both certificates for six months. She further testified: that Jonas Wheeler repeatedly told her that he intended to give defendant $700.00, or about that sum, to equalize his share with what he had advanced to his other sons and daughters. She and Albert Wheeler both testify to the indorsements of the two certificates having been made on that day at the house of the latter. Albert further testifies: "that in the afternoon, just before Jonas Wheeler left his house, he called defendant off, near the front gate, and handed him two papers which appeared to be the two papers he had seen him indorse. Bagley testifies, that he was sitting in front of the house, between the house and the gate; that he saw Jonas Wheeler get up from the steps where he was sitting, and call defendant; they walked together to a point near the front gate, when he saw Jonas Wheeler hand to defendant a certificate of deposit, saying: "take this and lend Jim Downey one thousand dollars out of it," and heard Jonas Wheeler ask defendant if he intended to buy a hack next day, to which defendant replied, "I don't know, I would like to," and Jonas Wheeler said "well, buy it, if I were you I would buy it;" that Jonas Wheeler then handed defendant another certificate of deposit, saying, "here is a certificate for seven hundred dollars I give you, do what you please with it." Jeff Jones testifies, that between one and two years prior to his death, he heard Jonas Wheeler say, that he had given each of his sons, except defendant, eighty or one hundred acres of land, and each of his daughters as much property as he was able to give, that he intended to give defendant the same quantity of land, but as he had sold the mineral rights in the land he then had, he would give defendant enough money to make his land of the same value of that he had given his other sons. James Reeder testifies, that between two and four weeks prior to the death of Jonas Wheeler, he told him that men ought always to arrange their business when in
Vol. 97.

health; that he had neglected to arrange certain business matters, but he would not put it off any longer, and that he intended to give defendant eighty or one hundred acres of land, and about $700.00 in money, to make him equal to his other sons.   There is no contradictory or conflicting evidence as to the circumstances of the indorsement and delivery of the certificates, or the repeated declarations of Jonas Wheeler as to his intentions.   The mere fact, that Albert Wheeler, who it seems was near enough to hear what Jonas Wheeler said to defendant, on handing him the certificates of deposit, testifies to no declarations made by Jonas Wheeler at that time, does not, necessarily, put his testimony in conflict with that of Bagley; he does not deny the declaration; it does not appear that he was examined in regard to them, and if he had stated that he did not hear them, it would be a case of negative and positive testimony.   If the evidence of these witnesses is believed, there was a completely executed gift of the certificate of deposit of seven hundred dollars.

The evidence offered by plaintiff in rebuttal, consists of the testimony of John Isaacs and John Bivens, brothers-in-law of defendant, and Morgan Isaacs, the father of the first witness, as to the statement made by defendant.   John Isaacs testifies: that before the burial of Jonas Wheeler, defendant told him that he had deposited the $700.00 in bank, because he did not know what else to do with it, and on the morning of July 22, 1889, at witnesses' house, defendant said he was going to Birmingham, and that his father wished him to buy a hack, and had given him the money to do so.   He further testified, that on another occasion, defendant told him that he had only paid $7.50 of his money towards payment for the hack.   The testimony of John Bivens is, that he heard defendant say, he placed the money in bank in his own name, because he did not know what else to do with it, and that Downey advised him to do so.   Morgan Isaacs testifies, that on the day Jonas Wheeler was buried, defendant told him that he went down to lend Downey $1,000.00 and there were $700.00 over, and when he drew the $700.00 from the bank, he noticed some suspicious looking negroes watching him who followed him to Brown's store, and fearing them, he deposited the money in the bank in his own name, because he did not know what else to do with it.   These statements do not accord, except in one expression, "because he did not know what else to do with it," —neither are they supported by the facts.   Mrs. Wheeler testifies, that the hack was not brought from Birmingham

[Wheeler v. Glasgow.]

till some time after her husband's death; and Downey states, that when the $1,000 was paid to him, he left the bank, and did not know what transactions were then had between defendant and the bank, so, he could not have advised him what to do with the money. It also appears from the testimony of Enslen, that defendant never took the money out of the bank. If defendant did say, that his father gave him the money to buy a hack, this is consistent with the testimony of Bailey; and if he said that after hearing of his father's death, he deposited the money in his own name because he knew not what else to do with it, this is not inconsistent with a gift of the certificate of deposit. Defendant denied having made any of these statements. But, conceding he made the statements, they do not impair the force of the uncontradicted evidence, as to the circumstances of the indorsement and delivery of the certificates of deposit.

From the facts shown by the evidence—the relation of father and son, between Jonas Wheeler and defendant; that the father has made advancements to his other children and none to defendant, his repeated declaration prior, and at the time of the act, of his intention to give defendant $700.00 to equalize him with his other children; also the indorsement and delivery of the certificate of $700.00, the amount he had so repeatedly declared his intention to give him,—the conclusion follows, that the indorsement and delivery of the certificate was intended as a gift or advancement.

It being shown that Jonas Wheeler died before defendant received the money, it is contended, that the authority to receive it from the bank, conferred on defendant by the indorsement and delivery of the certificate, was revoked by the death of Jonas Wheeler, and that the gift did not become perfect. It may be, that when an uncertified bank check is a donation, the mandate to the bank to pay it is revoked by the death of the donor, rendering the check worthless; but a certificate of deposit stands on a different footing, somewhat, from a certificate bank check, which is irrevocable. 2 Dan. Neg. Bank, § 1603. A certificate of deposit payable to the depositor, or order, or to bearer, so framed as to constitute an undertaking to pay the money with interest, is, in its nature and essential characteristics, the same as a promissory note, and when indorsed and delivered for a purpose other than the use or accommodation of the depositor, passes beyond his power of revocation.—*Miller v. Austen*, 13 How. 218; 2 Amer. & Eng. Encyc. of Law, 104; 1 Morse on Banks, § 298. As a general rule, choses in action, equally

[Kansas City, Memphis & Birmingham R. R. v. Ivy Leaf Coal Co.]

with things in possession, may be subject of a valid gift. A certificate of deposit is the subject of gift, the same as a promissory note, and when indorsed and delivered for such purpose, the gift is perfect though the donor may die before the money is actually co lected.

It is also contended that the indorsement and delivery of the certificate having been made on Sunday, are in violation of the Sunday-law and pass no title to defendant. Section 1749 of the Code declares : All contracts made on Sunday, unless for the advancement of religion or in the execution, or for the performance of some work of charity, or in case of necessity, are void." Only *contracts* are declared void. A contract is an agreement between two or more persons, whereby, in consideration of something done, or promised to be done, by the party on one side, the party on the other side undertakes to do, or not to do a particular thing. A valuable consideration is an essential element. A gift, completed and executed, has none of the elements, nor the properties of a contract, and does not come within the prohibition of the statute.—*Flannigan v. Meyer*, 41 Ala. 132 ; *Tamplin v. Still*, 77 Ala. 374.

Upon a review of the evidence, in the light of the relation which the witnesses sustained to the case, we are forced to the conclusion that defendant has shown a complete gift of the certificate of deposit.

Reversed and rendered for the defendant.

The foregoing opinion was prepared by the late Justice Clopton, and has been adopted by the court.